Gary AKIN, Petitioner,

v.

**OFFICE OF THRIFT SUPERVISION
DEPARTMENT OF TREASURY,**
Respondent.

No. 91–4023.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1992.

Joel M. Androphy, Berg & Androphy, Houston, Tex., for petitioner.

Aaron B. Kahn, Christine Harrington, Steven Horn, Stanley Heht, Director of Enforcement, Office of Thrift Supervision, Washington, D.C., for respondent.

Before WISDOM, JONES, Circuit Judges, and PARKER, District Judge.[1]

EDITH H. JONES, Circuit Judge:

Petitioner Gary L. Akin challenges a cease and desist enforcement order of the Director of the Office of Thrift Supervision, that requires him to pay over $19 million to restore the net worth deficiency of a savings and loan association. *See* 12 U.S.C. § 1818(b)(1). We affirm.

## FACTS

Akin was the sole shareholder, President, Chief Executive Officer, and Chairman of the Board of TexasBanc Savings Association (TB) in Conroe, Texas. Under Akin's direction, TB sought to expand its operations. However, federal regulators feared that TB's expansion ambitions could under-

---

1. District Judge of the Eastern District of Texas, sitting by designation.

mine its financial stability. In response to these concerns, Federal Savings and Loan Insurance Corporation (predecessor agency of the Office of Thrift Supervision)[2] officials notified Akin that they were considering cease and desist proceedings against TB officers because TB's assets had fallen below the prescribed net worth requirement. *See* 12 C.F.R. § 563.13 (1986).

This move threatened Akin's control of TB, prompting him to enter negotiations with the FSLIC in late 1986 and early 1987. Akin and the FSLIC executed a Net Worth Maintenance Agreement (Agreement) on February 10, 1987. The Agreement provided that Akin would maintain TB's net worth at the levels required by 12 C.F.R. § 563.13 (1986), or any successor regulations. Akin agreed to personal liability for any net worth deficiencies. The FSLIC was to notify Akin of any net worth deficiency and he then would be required to infuse capital correcting the deficiency within a ninety-day period.

In March 1989, regulators notified Akin of a $4.7 million deficiency. A second notice ensued in June 1989, and a third notice followed in August 1989. By September 30, 1989, the net worth deficiency had reached $19,597,000. The OTS based these net worth deficiency calculations on reports filed by TB, through Akin acting as chief executive officer. Akin later resigned his positions with TB, but he retained full stock ownership of TB.

On November 7, 1989, the OTS began formal cease and desist proceedings under 12 U.S.C. § 1818(b)(1) to enforce the Agreement. Akin answered, denying allegations of net worth deficiency. A hearing before an administrative law judge began on February 7, 1990. Although Akin was called to testify, he asserted his right to remain silent and did not answer questions. Testimony was presented by an OTS official which suggested that Akin made some capital contributions to TB at some time and in some unknown amount; however, comprehensive evidence showed that the net worth deficiencies remained uncured.

During the pendency of the hearing, on February 23, 1990, the director of the OTS appointed the Resolution Trust Corporation (RTC) as receiver for TB. On May 7, 1990, the judge issued his proposed decision to the director, finding that Akin breached the Agreement and recommending that Akin be required to infuse a sufficient amount of capital to remedy the deficiencies resulting from Akin's breach of the Agreement.

On December 24, 1990, the director issued a final decision and cease and desist order against Akin. The order concluded that Akin's failure to infuse capital sufficient to remedy the reported net worth deficits violated the Agreement. The director ordered Akin to immediately pay $19,597,000 into the TB receivership. The director also ordered the administrative law judge to conduct supplementary proceedings to determine any liability Akin may have incurred under the Agreement after September 30, 1990.

Akin raises several challenges to the director's order. He first claims that the order requiring him to make capital contributions to TB is unenforceable because it exceeds the cease and desist powers granted the OTS under 12 U.S.C. § 1818(b)(1). Akin also asserts that the Agreement is unenforceable because it is fundamentally unfair to him. Akin also alleges that he was improperly denied a jury trial, and that the judge was biased against him.

## SCOPE OF SECTION 1818(b)

The OTS director holds expansive authority to issue cease and desist orders when any "institution-affiliated party," as defined by statute, is engaging in an unsafe or unsound practice in conducting the affairs of the financial institution, or is knowingly or recklessly violating any applicable law or regulation, or is breaching a fiduciary duty to the institution, thereby threatening more than a nominal loss to the

**2.** In 1989, Congress instituted broad revisions of banking regulatory statutes through passage of the Financial Institutions Reform, Recovery, and Enforcement Act, (FIRREA) Pub.L. No. 101–73, 103 Stat. 183 (1989). The FIRREA dissolved the FSLIC and created the OTS to act as the principal regulator of savings and loan associations.

institution. 12 U.S.C. §§ 1813(q), 1818(b)(1). The director may also issue cease and desist orders to correct violations of written agreements executed between the agency and the institution. *Id.* Subsection 1818(b)(6) authorizes the director to issue a cease and desist order requiring affirmative action to correct conditions resulting from violations of regulations or written agreements—as in the instant case—including the power to seek reimbursement and restitution when a party was unjustly enriched through the violation.

 Judicial review of orders issued under this section lies in this Court. 12 U.S.C. §§ 1818(h)(2), 1818(i)(2)(A)(iv). We must sustain the director's findings if they are supported by substantial evidence in the record as a whole. 5 U.S.C. § 706(2); *Bullion v. Federal Deposit Ins. Corp.*, 881 F.2d 1368, 1372 (5th Cir.1989). The remedy ordered by the director will not be disturbed unless it is an abuse of discretion or is otherwise arbitrary and capricious. *Groos Nat'l Bank v. Comptroller of the Currency*, 573 F.2d 889, 897 (5th Cir.1978). "The assessment of a penalty is particularly delegated to the [director]. The choice then of a sanction is not to be overturned unless 'it is unwarranted in law' or 'without justification in fact.'" *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973).

 The director found that TB had been injured and that Akin had been un-

justly enriched by not complying with the terms of the Agreement. By failing to make capital infusions sufficient to cure the net worth deficiency, Akin was able to retain capital which otherwise would have been contributed to TB.[3] Akin contends that there is no support for the director's conclusion that he was unjustly enriched by violating the Agreement.[4] He counters that the OTS was unjustly enriched by coercing him into an Agreement for which he gave no consideration. In so doing, Akin attempts to characterize the OTS cease and desist proceeding as a contract collection action in behalf of an institution which ceased to legally exist at the time of imposition of the receivership.

 Subsection 1818(b)(6)(A)(i) allows the director to order restitution or reimbursement if a violation of § 1818(b) results in a party's being unjustly enriched in connection with the violation. The statute does not define "unjust enrichment," and Akin urges the Court to construe the term in light of established contract principles and hold that he was not unjustly enriched. While arguing the invalidity of the Agreement and asserting that he gave no valid consideration, Akin also argues that the unjust enrichment doctrine cannot apply—as a matter of law—where parties have a legal contract. Akin's attack on the validity of the Agreement for want of consideration must fail in light of our holding in *Groos Nat'l Bank v. Comptroller of the Currency.* In *Groos*, the Court held that

---

3. The OTS argues that the director's order be sustained on the alternative ground that § 1818(b)(6)(F) allows the director to fashion any appropriate remedy for an act underlying a cease and desist order. The OTS claims that this provision does not require a showing that Akin was unjustly enriched by his failure to comply with the Agreement. However, we do not reach the question of whether this subsection affords such expansive relief. The director's order contained no findings or conclusions premised on § 1818(b)(6)(F), and we decline to consider this argument for the first time on appeal. *See Motor Vehicle Manufacturers Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983) ("'[A]n agency's action must be upheld, if at all, on the basis articulated by the agency at the time of [decision]"); *Global Van Lines, Inc.*

*v. Interstate Commerce Comm'n*, 714 F.2d 1290, 1299 n. 8 (5th Cir.1983).

4. Akin also challenges the director's finding that Akin failed to infuse any net worth as required by the Agreement, since June 30, 1988. In attempting to demonstrate that the finding is not supported by substantial evidence, *see Bullion*, 881 F.2d at 1372, Akin relies on nebulous testimony that Akin contributed capital at some unknown time and in some unknown amount. At the hearing, the OTS presented numerous detailed net worth statements showing the continuing decline of TB's net worth. The director cited these data in his finding. Akin presented no evidence to contradict the net worth deficiency calculations. We cannot say that the finding is not supported by substantial evidence.

agreements between regulatory agencies and financial institutions may be employed to achieve compliance with regulatory schemes and courts could enforce such agreements pursuant to 18 U.S.C. § 1818(b), notwithstanding the lack of contractual consideration. 573 F.2d at 896.

■ Akin alternatively argues that he factually received no benefit which may now be disgorged. He asserts that no benefit was transferred to him which he now wrongfully retains. Unjust enrichment, in the customary contract context, anticipates restitutionary action where a tangible benefit has been transferred. The OTS argues that Akin received the benefit of forbearance from immediate cease and desist action, as well as the benefit of retaining capital which he was obliged to contribute and failed to pay. Neither of the OTS's arguments dovetails neatly into a pattern of transfer of a benefit and restitution of that benefit from a party wrongfully retaining it. However, we do not accept that § 1818(b)(6)(A)(i) requires a precision fit into black letter contract law.

Use of § 1818(b) orders to recover monies from bank officers has been upheld when the bank has suffered losses as a consequence of the officer's actions. *Hoffman v. Federal Deposit Ins. Corp.*, 912 F.2d 1172 (9th Cir.1990); *del Junco v. Conover*, 682 F.2d 1338 (9th Cir.1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 786, 74 L.Ed.2d 993 (1983). A contrary result was reached in *Larimore v. Comptroller of the Currency*, 789 F.2d 1244 (7th Cir.1986) (en banc). The Seventh Circuit held that the agency's cease and desist authority did not extend to requiring reimbursement from bank directors who had authorized loans in violation of single borrower limits.

*Larimore* is distinguishable from the instant case because the agency had not shown that the directors were aware of the

violation and none of the directors had directly benefitted from the violation. More significant than merely distinguishing the case, however, is that Congress expressly rejected the narrow interpretation of § 1818 given by the Seventh Circuit. The legislative history of the FIRREA notes that the subsection presently before the Court was intended to strengthen the agency's regulatory authority in instances where unsafe or unsound banking practices stemmed from reckless disregard of an institutional officer's duties or where an officer was unjustly enriched by a violation. This section was enacted specifically to halt contests against agency authority to seek restitution and reimbursement. *See* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 467–68 (1989).

Read in its entirety, the statute manifests a purpose of granting broad authority to financial institution regulators. The statute suggests that unjust enrichment has a broader connotation than in traditional contract law.[5] Akin voluntarily entered the Agreement with the FSLIC so that he could retain control over TB. He gained the significant personal benefit of retaining and disposing of funds or property which he was otherwise obliged to contribute to TB in compliance with his agreement to be personally liable for net worth deficiencies. Akin has failed to show that the director's conclusion that he was unjustly enriched is arbitrary and capricious.

■ Akin further asserts that § 1818 was meant to apply only to viable financial institutions and not to receivership institutions. He predicates this argument on *MCorp Financial v. Board of Governors*, 900 F.2d 852 (5th Cir.1990), *cert. granted sub nom. Board of Governors of the Federal Reserve System v. MCorp*, —— U.S. ——, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991), in which this Court disavowed use

---

5. This is not to say that restitution orders should become a remedy of choice for OTS. The Senate Report accompanying the FIRREA provision that reversed *Larimore, supra,* cautioned: "It is the Committee's intent, however, that this power be used only in appropriate cases, for example, where the institution-related party has unjustly enriched himself at the institution's expense or

... has acted in reckless disregard of the banking laws and regulations. It is not intended that this power will be used in cases where the institution-related party engaged in less serious violations...." S.Rep. 774, 101st Cong., 1st Sess. at 39–40 (1989); *see also* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. at 392 (1989).

of § 1818 to assist FDIC receiverships in collection actions.

Akin's reliance is inapposite after oral argument in this case. The Supreme Court reversed this court's decision in *MCorp* for lack of jurisdiction, thereby vacating our ruling on the scope of § 1818. *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.,* —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991).

Akin's additional complaint that this Court is reviewing a collection action is factually flawed. He suggests that cease and desist authority under § 1818 grinds to an irreversible halt once an institution is taken into receivership. In the present case, the receivership order was entered after repeated violations of the Agreement, after initiation of cease and desist proceedings, and even after commencement of the enforcement hearing. Essentially, only the director's review of the administrative law judge's recommendation and entry of his final order remained. Thus, Akin urges a logical absurdity. His interpretation of the scope of § 1818 would allow an institution and its individual officers to ignore regulations, statutes and agreements and commit flagrant violations, and yet retain immunity from cease and desist actions if the violations were sufficiently severe to warrant prompt imposition of receivership.

This interpretation belies congressional intent expressed to adopt broader cease and desist powers with the passage of the FIRREA. The FIRREA included an amendment to § 1818(i)(3), providing that the regulatory agency's jurisdiction to institute cease and desist proceedings continued beyond a party's separation from the regulated institution, as long as that party was served with notice within six years of separation from the institution. The amendment also encompassed separation effected through a closing, such as is the case here, of an institution.

6. Akin points to a provision in the director's order allowing the RTC to approve the form of any capital contribution as evidence that the cease and desist action is a masquerade for a RTC collection action. However, the provision allows the RTC to approve only the *form* and

Also relying on the FIRREA amendments, the Seventh Circuit recently reached a similar conclusion in *Stanley v. Board of Governors of the Federal Reserve System,* 940 F.2d 267 (7th Cir.1991). Former directors argued that the Board had no power to assess penalties for violations of a cease and desist order once the company ceased to be a bank holding company and they ceased to be its directors. Rejecting the petitioners' arguments, the court noted that such a theory would allow a "disobedient director ... to get off scot-free [by] mismanag[ing] the bank and resign[ing] before the Board has a chance to assess civil money penalties." *Id.* at 270–71.

■ Akin directs the Court to 12 U.S.C. §§ 1819–21, which provide for prosecution of claims on behalf of the receivership, and asserts that post-closing exercise of cease and desist powers would unlawfully usurp receivership authority.[6] This argument has little merit, however, because this is not truly "post-closing" action. In the absence of clear congressional intent to impose an automatic stay of cease and desist proceedings upon receivership, the Court should look only to "whether the agency's [action] is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). We hold that allowing the post-receivership survival of a cease and desist action, commenced and nearly fully-prosecuted prior to the imposition of a receiver, does not usurp receivership authority and is a permissible interpretation of § 1818(b).

### FAIRNESS

■ Akin raises a number of fairness arguments, alleging bias by the administrative law judge, improper denial of a jury trial, and that the Agreement should not be

not the *amount* of the contribution. The receivership reasonably cannot be expected to be forced to accept a capital contribution in the form of unmarketable real property, or some other form which may not benefit the receivership.

enforced because it is fundamentally unfair to him.[7]

Akin claims that the administrative law judge's bias against him was manifest in the denial of motions for extension of time and for discovery. In order to disqualify a judge for bias, the moving party must plead and prove, with particularity, facts that would persuade a reasonable person that a bias exists, and that the bias is personal, as opposed to judicial, in nature. *Parrish v. Board of Commissioners of the Alabama State Bar*, 524 F.2d 98, 100 (5th Cir.1975) (en banc), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). Akin has raised no factual allegations supporting such a bias. His claim that he was drawn into a hastened hearing without counsel is not supported by the record. Akin also notes that the judge merely photocopied the OTS-proposed findings of fact and conclusions of law and adopted them as his decision. The director's order criticized the administrative law judge for the inattentive form of his decision and also allowed certain of Akin's exceptions. Although the director's decision and the administrative law judge's proposed decision are similar, it is evident that the director independently reviewed the judge's decision and reached his own conclusions and findings. Moreover, Akin raises no allegation of bias by the director. Accordingly, this claim has no merit.

Akin's claimed right to a jury trial must also fail. Where there is a proper administrative forum for adjudicating public rights, there is no right to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 54–55, 109 S.Ct. 2782, 2790, 2796–97, 106 L.Ed.2d 26 (1989). Akin repeats his claim that this action is a collection action on a breach of contract, entitling him to a jury trial. This characterization was rejected above and may not serve as the basis for a jury trial demand here.

Akin cites a single case in which the court noted that "there are serious constitutional implications to agency ordered reimbursements under [s]ection 1818(b)." *Citizen's State Bank of Marshfield v. Federal Deposit Ins. Corp.*, 751 F.2d 209, 215 (8th Cir.1984). Akin stretches the dicta of this case beyond its reasonable elasticity. The Eighth Circuit was faced with orders of mass rebates to bank customers. The court distinguished cases involving orders for reimbursement by bank officers to the institution, stating that those cases were not helpful in the analysis before it.

## CONCLUSION

Akin has failed to effectively challenge the application of 12 U.S.C. § 1818(b) and the OTC director's order to enforce the Agreement. He has not shown that the director's challenged findings of fact and conclusion of law are either not supported by substantial evidence or are arbitrary and capricious. Akin has not met the standard to demonstrate bias on the part of the administrative law judge. Since no right to a jury trial attaches to an administrative cease and desist proceeding, Akin was not improperly denied trial of his cause by a jury. Accordingly, the Order of the Director of the Office of Thrift Supervision is AFFIRMED in all respects.

---

**7.** Akin cites no legal authority supporting the view that the Court may reverse the order on the grounds of fairness. Akin also did not present this argument before the director, thereby failing to preserve it for appellate review. Notwithstanding, the argument is wholly without merit. Hinting at selective enforcement, Akin cites policy declarations which are not only inapposite as they apply only to purchasers of failed thrifts, but also were issued after the Agreement was reached and would not apply. Finally, the policy declarations are but guidelines which even the issuing agency is not bound to unerringly follow. *United States Dep't of Labor v. Kast Metals Corp.*, 744 F.2d 1145, 1152 (5th Cir.1984).