**CITYFED FINANCIAL CORP.,**
et al., Plaintiffs,

v.

**OFFICE OF THRIFT SUPERVISION,**
et al., Defendants.

**Civil A. No. 94–1273 (HHG).**

United States District Court,
District of Columbia.

Sept. 8, 1994.

Frank James Eisenhart, Dechert, Price & Rhoads, Washington, DC, for CityFed Financial Corp.

Ronald Wayne Steven, Kirkpatrick & Lockhart, Washington, DC, for John W. Atherton, Jr., Alfred J. Hedden, Gilbert G. Roessner, Gordon E. Allen, Peter R. Kellogg.

Bruce F. Rinaldi, Office of Thrift Supervision, Washington, DC, for Office of Thrift Supervision, Jonathan L. Fiechter.

*Memorandum*

HAROLD H. GREENE, District Judge.

Plaintiff CityFed Financial Corporation ("CityFed") has moved for a preliminary injunction enjoining a Temporary Cease and Desist Order ("Temporary Order") issued by the Office of Thrift Supervision ("OTS") on June 2, 1994. In short, the Temporary Order freezes CityFed's liquid assets pending the resolution of an administrative enforcement action filed by the OTS.

*Background*

CityFed was created in 1984 as part of the restructuring of City Federal, a federally insured savings institution. CityFed was to be a "shell" corporation, with no assets of its own. The OTS' predecessor, the Federal Home Loan Bank Board ("FHLBB"), allowed CityFed to acquire control of City Federal subject to certain conditions. Specifically, CityFed was to maintain City Federal's regulatory capital in accordance with certain requirements and was to infuse capital into City Federal should the institution fail to meet these requirements. CityFed and the FHLBB entered into the "Net Worth Maintenance Agreement" ("NWMA") to ensure that CityFed would comply with this condition.

According to the OTS, by November of 1989 CityFed had allowed City Federal's capital to fall $118.4 million short of minimum regulatory requirements. On December 6, 1989 the OTS demanded that CityFed comply with the requirements. On December 7, 1989, the OTS declared City Federal insolvent and appointed the Resolution Trust Corporation ("RTC") as the receiver.

On June 2, 1994 the OTS issued a "notice of charges" stating that it had instituted an administrative enforcement action against CityFed seeking to recover the $118.4 million that it failed to infuse into City Federal. It also issued the Temporary Order, which requires CityFed to post a security in the amount of its current assets, which total about $9 million. CityFed can comply with this requirement by placing its investments in an escrow account. The Temporary Order permits CityFed to spend $15,000 a month for operating expenses. Its current operations consist only of short-term, income-producing investments. Additionally, the Temporary Order contains a "hardship provision," which permits CityFed to petition the Director of the OTS for relief from the Order if the Order results in undue hardship to CityFed.

CityFed is obligated under its bylaws to advance and indemnify litigation expenses to current and former directors and officers. The plaintiffs-intervenors here are five Directors whose legal fees are currently being disbursed under the bylaws.

I.

■ To obtain a preliminary injunction, CityFed must establish that (1) unless the

Temporary Order is stayed, it will be irreparably harmed, (2) it is likely to prevail in the enforcement action before the OTS, (3) granting the preliminary injunction will not substantially harm third parties, and (4) granting the preliminary injunction lies in the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43, n. 1 (D.C.Cir.1977), *quoting Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958).[1]

### A. Irreparable Harm

■ CityFed argues that enforcement of the Temporary Order will cause it irreparable harm in two ways. First, it contends that posting $9 million as a security will force CityFed into bankruptcy, as its net worth is only about $7.7 million. Second, if $9 million of its liquid assets are frozen, it will be unable to advance litigation expenses to its officers. This will result in defaults, and CityFed will be liable for the amounts of those judgments. Along similar lines, the intervenors argue that unless the Temporary Order is enjoined or stayed, they will be unable to defend themselves in the OTS proceeding and in a separate court proceeding under way in New Jersey.

Neither of these arguments is convincing. Compliance with the Temporary Order will not force CityFed into bankruptcy. First, CityFed can comply with the order by placing the $9 million in an escrow account. It will not have to pay over a security in excess of its net worth. Moreover, even if the terms of the Temporary Order would put CityFed in dire financial straits, the Order contains a hardship provision allowing CityFed to petition the OTS for relief from the Order. CityFed should seek relief under this provision before it argues to the Court that enforcement of the Order will cause it irreparable harm.

■ The Court also finds that no irreparable harm will result in relation to CityFed's obligation to compensate its directors for their legal fees. The law is settled that the claim of irreparable injury must be "both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985). CityFed has pointed to no defaults that will actually issue, and no substantial judgments for which it will certainly be liable. Similarly, the intervenors have not demonstrated that, absent CityFed's advancement of legal fees, they will be unable to defend themselves. Only one Director even asserts that he does not have the resources necessary to pay his defense counsel. Furthermore, the OTS has offered to allow CityFed to advance the directors legal fees providing that the directors guarantee repayment of the advances if the OTS prevails in the underlying action. CityFed has refused this offer. It seems disingenuous to refuse the Agency's proposed resolution and then argue before this Court that the Order prevents CityFed from honoring its obligation to advance legal fees.

As the Temporary Order will not prevent CityFed's directors from defending themselves in administrative and court actions and the Order will not force CityFed into bankruptcy, the plaintiffs have failed to show that enforcement of the Temporary Order will result in irreparable harm.

### B. Likelihood of Success on the Merits

CityFed claims that it will prevail in the administrative action because it will succeed on one or more of the following affirmative defenses.[2]

#### 1. The OTS lacked jurisdiction to issue the Temporary Order

■ The OTS has jurisdiction to issue temporary cease and desist orders, such as the Temporary Order, against savings and loan holding companies under 12 U.S.C.

**1.** CityFed has argued that the Court should not apply the standard four-factor preliminary injunction analysis, and should instead set aside the Temporary Order on the grounds that the OTS did not have jurisdiction to issue the Order. The Court finds that the issue of whether the OTS had jurisdiction is part of the question of whether CityFed is likely to prevail on the merits of the underlying action.

**2.** Both CityFed and the OTS have set forth numerous arguments in support of their positions. This opinion will address only the primary ones.

§§ 1818(c)(1), (b)(9). CityFed concedes that at one time it was a S & L holding company, that is, a company that controls a savings and loan association such as City Federal. 12 U.S.C. § 1467a(a)(1)(D). CityFed argues, however, that it is no longer a savings and loan holding company because, once City Federal entered bankruptcy proceedings on December 7, 1989, CityFed no longer *controlled* City Federal. As it is no longer a savings and loan holding company, CityFed maintains, it is no longer subject to the jurisdiction of the OTS.

The Court finds this argument unpersuasive. During the time CityFed allegedly violated the NWMA (March through December of 1989), CityFed was in control of City Federal. It cannot escape responsibility for its actions during this period simply because City Federal has since gone bankrupt. In *Akin v. OTS,* 950 F.2d 1180 (5th Cir.1992), the Fifth Circuit found that the OTS retained the power to issue a cease-and-desist order against an individual, even though the institution with which that individual had been affiliated had declared bankruptcy.

> [*Akin*] suggests that cease and desist authority grinds to an irreversible halt once an institution is taken into receivership.... His interpretation of the scope of § 1818 would allow an institution and its individual officers to ignore regulations, statutes and agreements and commit flagrant violations, and yet retain immunity from cease and desist actions if the violations were sufficiently severe to warrant prompt imposition of receivership.

950 F.2d at 1185. This language, with which the Court agrees, makes clear the principle that bankruptcy does not exonerate an entity responsible for violating a regulation or agreement.

### 2. The OTS Did Not Meet the Statutory Requirements for Issuing a Temporary Order

█ CityFed also argues that the OTS did not meet the requirements for issuing a temporary cease-and-desist order under 12 U.S.C. § 1818(c)(1). The statute provides that the OTS may issue such an order if it determines that the alleged violation "is like-ly to cause insolvency or significant dissipation of assets or earnings of the depository institution ... or is likely to otherwise prejudice the interests of its depositors...." CityFed argues that this language does not apply to its alleged breach of the NWMA for several reasons. First, it contends that its expenditures cannot be considered a "dissipation" of assets because the word "dissipation" implies foolish or aimless wasting or squandering of resources, and CityFed's expenses are not foolish or aimless. CityFed also maintains that the alleged violation can do no harm to the assets of the depository institution because the depository institution (City Federal) no longer exists. Finally, CityFed contends that the Temporary Order could not be justified on the grounds of protecting the interests of depositors because, as a federal insurance fund has reimbursed City Federal's depositors for any losses caused by the insolvency, there are no depositors left.

█ None of these arguments is convincing. First, if CityFed is indeed depleting assets for its own business expenses that it should have infused into City Federal, then it is "dissipating" assets. It is disingenuous to argue that funds disbursed in direct violation of an agreement with the OTS are not wasted or ill-spent. Furthermore, CityFed's expenditures can affect the assets of a depository institution, despite the fact that City Federal has entered into receivership. If the OTS is correct, the capital it seeks to freeze belongs to City Federal, not CityFed. Thus, CityFed would be spending a depository institution's assets in violation of the NWMA.

█ Moreover, even if CityFed's expenditures do not cause dissipation of the assets of a depository institution, the expenditures certainly prejudice the interests of City Federal's depositors. CityFed contends that this cannot be the case because City Federal no longer has any depositors—the federal insurance fund has made good on depositors' claims against the institution. CityFed ignores the fact, however, that the insurance fund now stands in the shoes of the depositors, and any action that would prejudice the depositors' interest now prejudices the insurance fund's interests. Thus, CityFed's cur-

rent expenditures prejudice the interests of depositors as contemplated by § 1818(c)(1).

### 3. The OTS' action against CityFed is barred by the statute of limitations.

■ CityFed further argues that the administrative action instituted by the OTS is barred by the relevant statute of limitations. Any action by the OTS must be brought "within five years from the date the claim first accrued...." 28 U.S.C. § 2462. As the factual basis for the OTS action was in place on March 31, 1989, CityFed maintains that any action brought after March 31, 1994 (such as the one at issue) is untimely. The OTS contends that CityFed's violation of the NWMA was continuous from March until December 7, 1989. At every time between those two dates, CityFed failed to maintain City Federal's capital at the required level. Thus, the cause of action continually accrued until December 7, 1989, when City Federal entered into receivership. The statute of limitations does not run, under the OTS' interpretation, until December 1994 and thus the OTS action is timely.

There is no precedent directly addressing whether actions such as CityFed's should be considered continuing violations. The Court finds, however, that CityFed's alleged breach of the NWMA should be viewed as continuing. If CityFed were correct, the OTS would not be able to issue a temporary order today, even if CityFed still controlled City Federal and had not been in compliance with the NWMA at any time since March of 1989. This would be an anomalous result. It makes more sense to hold that the statute of limitations continuously runs from each day CityFed allowed City Federal's assets to fall below the level specified in the NWMA.

■ The Court therefore concludes that CityFed has not established that it would prevail on its statute of limitations defense. Nor has it demonstrated that the OTS does not have jurisdiction to issue the Temporary Order, or that the OTS failed to meet the statutory requisites for issuing the Temporary Order. Accordingly, CityFed has not demonstrated that it is likely to prevail on the merits, as it must to obtain a preliminary injunction.

### C. Whether the Granting of the Preliminary Injunction Will Substantially Harm Third Parties

■ CityFed has not shown that granting the preliminary injunction will not substantially harm third parties. If the OTS is correct, then CityFed's assets actually belong to the federal insurance fund, and ultimately, the taxpayers. If the Court enjoins the Temporary Order, then CityFed would be able to continue spending the taxpayers' dollars on its own business expenses. CityFed has offered no argument showing that the taxpayers' interests will not be detrimentally affected if the Temporary Order were granted, and thus has not met its burden of establishing that the preliminary injunction will not cause significant burden to third parties.

### D. Whether the Public Interest Favors Granting the Preliminary Injunction

■ CityFed argues that the public interest favors "the predictable and orderly resolution of creditors' claims," and that the fact that the OTS waited from 1989 to 1994 to institute this action is far from predictable and orderly. This "public interest," however, is normally addressed by the statute of limitations. If the OTS brought this administrative action in a timely manner under the statute of limitations, then CityFed's cited interest is served.

CityFed has thus failed to demonstrate that this Court's enjoining the Temporary Order lies in the public interest. Similarly, CityFed has not shown that the issuance of the preliminary injunction will not substantially harm third parties, that CityFed is likely to prevail on the merits of the underlying action, or that CityFed will suffer irreparable harm if the Court does not grant the preliminary injunction. Consequently, CityFed has not met the standard for granting a preliminary injunction as set forth in *Holiday Tours*. CityFed's motion for a preliminary injunction is being denied by an Order issued contemporaneously herewith.