**Jack W. MORTON, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–1517.

United States Court of Appeals for Veterans Claims.

July 14, 1999.

Kenneth B. Mason, was on the brief for appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Barbara J. Finsness, were on the brief for appellee.

Before FARLEY, HOLDAWAY, and GREENE, Judges.

FARLEY, Judge:

This is an appeal from a September 6, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which determined that the appellant's claims for service connection for hearing loss; varicose veins; a back dis-order other than scoliosis of the thoracolumbar vertebrae; and shortening or lengthening of the right upper extremity were not well grounded. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. BACKGROUND

The appellant, Jack W. Morton, served in the U.S. Army from July 1943 to November 1946. Record (R.) at 157. Although his preinduction physical noted a healed left eardrum perforation (R. at 23), his service medical records are silent with respect to any of the claimed disabilities (R. at 13–148, 151).

Over the years, the appellant was seen for numerous disabilities and granted service connection for several. On November 16, 1946, the day after discharge from service, he was rated 100% for tuberculosis (TB). In January 1951, he underwent a segmental resection of the anterior segment and a portion of the posterior segment of the right upper lung lobe, and decortication of the right lung. R. at 167. It was noted at the time that the appellant had had "a severe infection of his left middle ear, which was perforated" in infancy. R. at 166. By 1963, the TB rating had been reduced to 0%. R. at 169. An August 1983 VA examination noted an oval scar on the left eardrum but no hearing loss. R. at 187. An April 1984 VA examination noted varicose veins in the right leg. A June 1984 rating decision granted service connection for partial resection of the right 6th and 7th ribs (rated 10%), granted service connection for postoperative residuals from the segmental resection of the upper lobe and right lung decortication (rated as noncompensable), increased the TB rating to 10%, and denied service connection for varicose veins and otitis media. R. at 211–12. An August 1989 VA examination found no shortening of the right upper extremity versus the left. R. at 222. A May 1991 VA examination found varicose veins in both legs. A perforated left tympanic membrane was noted along with associated hearing loss which the examiner thought might be service connected,

because this apparently was incurred in the U.S. Navy [sic] since he was aboard .

ship when the perforation occurred and it happened when artillery guns aboard ship were fired in his vicinity. . . . While in the Navy [sic], he also had varicose veins but it has never been adjudicated.

R. at 247. The examination also found that the left upper extremity was one-half inch shorter than the right and stated: "Therefore, it is not the right upper extremity that is shortened, but the left one." R. at 248. An x-ray report noted moderate degenerative changes of the lower lumbar spine and associated slight anterior pseudo-spondylolisthesis of L4 over L5. R. at 251.

In October 1991, a left underlay tympanoplasty with mastoidectomy was performed. R. at 303–07. August 1994 x-rays noted a mild degree of right sided scoliosis of the thoracic spine. R. at 511. In May 1995, the VA regional office (RO) granted service connection for scoliosis of the thoracolumbar vertebrae as secondary to the service-connected segmental resection of the right upper lobe and denied service connection for hearing loss. R. at 519–25.

In the decision on appeal, the BVA found no evidence of nexus with respect to the claims for hearing loss and back disability. Regarding the claim for varicose veins, the BVA found no evidence, other than the appellant's own testimony, that the condition existed in service and no evidence linking the appellant's condition to that period. It also noted that no medical evidence was presented to suggest that the shortening or lengthening of the right upper extremity was due to the surgery the appellant had for his service-connected TB, as he was contending.

The appellant, through counsel, did not address in his brief whether these claims are well grounded; in fact, he appears to concede they are not. *See* Appellant's Brief at 6 (admitting that "there may be no medical evidence of nexus connecting the current disabilities with those arising on active duty"). Rather, the appellant argues that VA is required to assist him by fully developing the facts pertinent to his claim even though he has yet to submit a well-grounded claim. He purports to find support for this requirement in the following: 38 C.F.R. §§ 3.103(a), 3.159(a); VA Adjudication Procedure Manu-

al, M21–1 (Manual M21–1), Part III, para. 1.03(a) and Part IV, para. 2.10(f); and policies set forth in two documents: a May 24, 1996, letter from the director of the VA Compensation and Pension Service to the VA Regional Officers and VBA Circular 21–94–2, Change 2, Appendix A (C & P policy). The appellant also requests a remand pursuant to *Stegall v. West,* 11 Vet.App. 268 (1998), asserting that the RO failed to comply with an earlier BVA remand.

The Secretary responds that the appellant has abandoned the well-grounded claims issue because it had not been briefed. In the alternative, he argues that even if the Court deems the issue to have been pressed on appeal, the claims should be found not well grounded because the requisite nexus evidence is missing. He further argues that the "duty to assist a not-well-grounded claim" issue was not raised below and should not be considered by the Court in the first instance. He adds that the claim referenced by the appellant in his *Stegall* argument was the subject of a different BVA decision that the appellant's counsel expressly excluded from this appeal when he filed an amended Notice of Appeal. The appellant has not filed a reply brief.

As the Secretary pointed out and a review of the record confirms, the appellant's argument under *Stegall* was based upon a claim that was not raised in the BVA decision under appeal; accordingly, a remand is not warranted. *See* 11 Vet.App. at 270. Further, since the appellant virtually concedes that his claims are not well grounded and, in any event, provides no argument in his brief to the contrary, we find the issue abandoned. *Lalonde v. West,* 12 Vet.App. 377, 381 (1999) ("because the appellant has not presented any argument contrary to the Board's finding on that issue, he has actually abandoned that issue on appeal."); *Kingston v. West,* 11 Vet. App. 272, 272 (1998); *Phillips v. Brown,* 10 Vet.App. 25, 27 (1997) (claims not briefed are abandoned); *Bucklinger v. Brown,* 5 Vet. App. 435 (1993).

## II. ANALYSIS

The appellant's entire appeal rests on the argument that, by virtue of various regula-

tions, Manual M21–1 provisions, and C & P policy concerning the development of claims, VA has taken upon itself a duty to assist this appellant even though he has not submitted a well-grounded claim. Pretermitting the question of whether the Court could or should consider arguments not raised to or adjudicated by the Board, a matter currently pending before the Court in *Stuckey v. West*, No. 96–1373, the Court will address—and reject—the merits of the appellant's substantive arguments.

This Court and the United States Court of Appeals for the Federal Circuit (Federal Circuit) have held that 38 U.S.C. § 5107(a) requires that, if a well-grounded or plausible claim has not been submitted, there is no duty on the part of VA to assist in the claim's full development. Section 5107 provides:

(a) *Except when otherwise provided by the Secretary in accordance with the provisions of this title,* a person who submits a claim for benefits under a law administered by the secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist *such a claimant* in developing the facts pertinent to the claim.

(b) When, after consideration of all the material and evidence of record in a case before the Department [of Veterans Affairs] with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of doubt in resolving each such issue shall be given to the claimant. *Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section.*

38 U.S.C. § 5107(a) (emphasis added).

Based on the explicit statutory language, structure, and purpose, *see Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), this Court has discerned a Congressional intent to create a chronological process whereby appellants who have met the requisite burden, and only those appellants, are entitled to the benefit of VA's duty to assist. Consistently, we have so held. *See Allday v. Brown,* 7 Vet.App. 517, 526 (1995); *Littke v. Derwinski,* 1 Vet.App. 90, 91–92 (1990); *Murphy v. Derwinski,* 1 Vet.App. 78, 82 (1990); *Gilbert v. Derwinski,* 1 Vet.App. 49, 55 (1990); *see also Elkins v. West,* 12 Vet.App. 209 (1999)(en banc); *Schroeder v. Brown,* 6 Vet.App. 220 (1994); *Grottveit v. Brown,* 5 Vet.App. 91 (1993). In *Grivois v. Brown,* 6 Vet.App. 136, 139 (1994), we specifically held:

Section 5107(a) of title 38 unequivocally places an initial burden on a claimant to produce evidence that the claim is well grounded or, as we have held, is plausible. *See* 38 U.S.C.[ ] § 5107(a) (1991); *Grottveit* [, 5 Vet.App. at 92]; *Tirpak v. Derwinski,* 2 Vet.App. 609, 610–11 (1992). This statutory prerequisite reflects a policy that implausible claims should not consume the limited resources of the VA and force into even greater backlog and delay those claims which—as well grounded—require adjudication. This policy is starkly clear when one reads the specific reiteration of that requirement in § 5107(b) of title 38. 38 U.S.C.[ ] § 5107(b) (1991).... Attentiveness to this threshold issue is, by law, not only for the Board but for the initial adjudicators, for it is their duty to avoid adjudicating implausible claims at the expense of delaying well-grounded ones.

In *Epps v. Gober,* 126 F.3d 1464, 1467 (Fed.Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998), the Federal Circuit expressly upheld our interpretation of section 5107(a) and the "chronological relationship" it establishes. In so doing, it rejected the appellant's argument that the Secretary's duty to assist is not conditional upon the submission of a well-grounded claim. Upon reviewing the statutory provision, the Federal Circuit construed the "such a claimant" language of section 5107(a) as having its antecedent in the preceding sentence. It also found that the last sentence of section 5107(b), which reprises the "burden" of section 5107(a), constituted support for the proposition that the duty to present a well-grounded claim is the claimant's alone. The Federal Circuit dismissed

the appellant's argument that the legislative history of section 5107 indicates that Congress intended to codify 38 C.F.R. §§ 3.102 and 3.103, agency regulations which he suggested represented the longstanding practice on the part of VA to provide unconditional assistance. *Id.* at 1467–68. Finding the legislative history not to bear directly on the statutory construction in question, the Federal Circuit held "that § 5107(a) requires a claimant to submit and establish a well grounded claim before the [ ]VA is required to provide assistance to a claimant in developing the facts underlying his or her claim." *Id.* at 1469.

In addition, the Federal Circuit found "all the other arguments made by Epps ... to be unpersuasive." *Id.* at 1470. Among those "other arguments" were arguments specifically premised upon the claims development provisions of 38 C.F.R. § 3.103 (Appellant's Brief (Br.), *passim;* Reply Br. of Appellant at 1–2); and 38 C.F.R. § 3.159 (Appellant's Br. at 24); and M21–1, Part III, Change 50, Chap. I, ¶ 1.01 (Feb. 23, 1996) (Appellant's Br. at 30–31). Moreover, the Secretary also specifically raised 38 C.F.R. § 3.159, arguing that "[s]ection 3.159 of title 38, Code of Federal Regulations, states that VA will assist claimants by requesting pertinent evidence ... and the regulation does not expressly limit such assistance to cases where the claimant has established that the claim is well grounded." Secretary's Br. in *Epps,* No. 97–7014, at 20–21. In affirming this Court's interpretation of 38 U.S.C. § 5107, the Federal Circuit necessarily found that argument by the Secretary, along with the "other arguments" advanced by the appellant, "unpersuasive."

Notwithstanding the Federal Circuit's holding in *Epps,* the appellant brings yet another challenge to this Court's and the Federal Circuit's interpretation of § 5107 based upon regulations, provisions of Manual M21–1, and C & P policy statements on claims development. Specifically, the appellant relies upon the following language: (1) "Before a decision is made about a claim being well grounded, it will be fully developed" (Manual M21–1, Part III ¶ 1.03(a) at 7–8); (2) "[Although VA's duty to assist does

not apply until a well-grounded claim is submitted, it is the policy of the Compensation and Pension Service as stated in Part III, para. 1.03(a) that a decision will not be made concerning well groundedness until the claim has been fully developed" (C & P policy); (3) "[I]t is the obligation of VA to assist a claimant in developing the facts pertinent to the claim ..." (38 C.F.R. § 3.102); and (4) "Although it is the responsibility of any person filing a claim ... which is] well grounded ... the [VA] shall assist a claimant in developing the facts pertinent to his or her claim" (38 C.F.R. § 3.159).

The Federal Circuit has definitively held that "there is nothing in the text of § 5107 to suggest that the [ ]VA has a duty to assist a claimant until the claimant meets his or her burden of establishing a 'well-grounded' claim" and "that § 5107(a) requires a claimant to submit and establish a 'well-grounded' claim before the [ ]VA is required to provide assistance to a claimant in developing the facts underlying his or her claim." *Epps,* 126 F.3d at 1469. The issue, therefore, is whether the Secretary, by regulation, Manual, and/or C & P policy can and has eliminated the condition precedent placed by Congress upon the inception of his duty to assist. The answer: No.

## A. The Regulations, Manual M21–1 Provisions, and the C & P Policies are Interpretive and do not Create Enforceable Substantive Rights

The Administrative Procedures Act (APA) defines a rule as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy...." 5 U.S.C. § 551(4) (1988). As we noted in *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990),

Rules fall into two main categories: substantive or interpretive. "The particular label placed upon it by the [agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive." *Columbia Broadcasting System v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942) (citations omitted.) A rule is substantive in nature when it "has

the force of law and narrowly limits administrative action." *Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir.1980); *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 666–67 (D.C.Cir.1978). In contrast, an interpretive rule, "is one that merely clarifies or explains an existing rule or statute." *Carter,* 643 F.2d at 8; *Guardian Federal Savings & Loan,* 589 F.2d at 664; *see also Pickus v. United States Board of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974). "Naturally there are instances when it is difficult to classify a given rule as substantive or interpretive." *Guardian Federal Savings & Loan,* 589 F.2d at 665.

The distinction between a substantive rule and an interpretive one can be significant for two reasons. First, substantive rules are subject to the general requirement of prior notice and opportunity to comment (*see* 5 U.S.C. § 553) while "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice" are excepted (*see* 5 U.S.C. § 553(b)(A)). Second, substantive rules may confer enforceable rights, while internal guidelines and interpretive statements of a federal agency, that are mandated neither by a statute nor by the Constitution, cannot confer substantive rights on a claimant. *U.S. v. American Prod. Indus., Inc.,* 58 F.3d 404, 407 (9th Cir.1995) ("Only regulations having the 'force and effect' of law can create a private right of action [citations omitted]."); *Akin v. Office of Thrift Supervision,* 950 F.2d 1180, 1186 n. 7 (5th Cir.1992) ("the policy declarations are but guidelines which even the issuing agency is not bound to unerringly follow."); *U.S. v. Craveiro,* 907 F.2d 260, 264 (1st Cir.1990) ("internal guidelines of a federal agency, that are not mandated by the statute or the constitution, do not confer substantive rights on any party," *citing U.S. v. Michaud,* 860 F.2d 495, 497 (1st Cir.1988)); *see also* I Kenneth Culp Davis & Richard Pierce, Jr., Administrative Law Treatise 6.1 at 234 (3d ed.1994) which explains:

> [A]n agency has the power to issue binding legislative rules only if and to the extent Congress has authorized it to do so.... [A] legislative rule can impose distinct obligations on members of the public in addition to those imposed by statute, as long as the rule is within the scope of rulemaking authority conferred on the agency by statute. By contrast, an interpretive rule cannot impose obligations on citizens that exceed those fairly attributable to Congress through the process of statutory interpretation.

*See also Syncor International Corp. v. Shalala,* 127 F.3d 90, 94 (D.C.Cir.1997) ("[T]he crucial distinction between [a substantive rule] and [a policy statement and interpretive rule] is that a substantive rule modifies or adds to a legal norm based on the agency's own authority. That authority flows from a congressional delegation to promulgate substantive rules, to engage in supplementary lawmaking.").

■ The foreword to Manual M21–1 states: "[T]his manual provides *procedures for* the adjudication of claims for compensation, pension ...." It goes on to address the content of the different parts of the Manual which include the responsibilities of the staff, instructions for specific ratings, and explanations of procedures. In so doing, Manual M21–1 provides guidance to the administrative adjudicators who act under the direction of the authority of the Secretary. In large part, then, Manual M21–1 is filled with internal housekeeping matters. While the agency's characterization of a rule is not binding, it can be "an important factor in determining whether a rule is interpretive" rather than substantive. *Warder v. Shalala,* 149 F.3d 73, 80 (1st Cir.1998).

When the Secretary promulgates guidelines within the scope of his authority to implement legislation, he can intentionally (or perhaps even unintentionally) create substantive rights that must and will be enforced by the Court. Indeed, substantive rules affecting rights can even be found in a "procedural" manual and, as the appellant correctly notes, this Court has found a number of substantive rules in the M21–1. *See, e.g., Fugere, supra; Moreau v. Brown,* 9 Vet.App. 389 (1996); *Hayes v. Brown,* 5 Vet.App. 60 (1993); *Hamilton v. Derwinski,* 2 Vet.App. 671 (1992) (*en banc*). In *Fugere,* we said:

Paragraph 50.13(b) did not merely clarify or explain an existing rule or statute. It has "the force of law and narrowly limits administrative action" in that it prescribes what action must be taken in the initial levels of adjudication. Paragraph 50.13(b) regulates the awarding of benefits for hearing defects in a particular instance, *i.e.*, when a change in benefits would result *only* from the implementation of a new rating schedule the old criteria *must* be applied. Paragraph 50.13(b) was more than a mere procedural guideline; it affected a substantive right and its placement in a procedural manual cannot disguise its true nature as a substantive rule. We hold that paragraph 50.13(b) fits well within the statutory (5 U.S.C. § 551(4)) and common law definitions of a substantive rule.

*Fugere,* 1 Vet.App. at 107. We held further that, because the Manual M21–1 provision constituted a substantive rule, it could not be rescinded without affording APA due notice and an opportunity to be heard. *Id.* at 108; *see generally Walters v. National Assoc. of Radiation Survivors,* 473 U.S. 305, 333, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985); *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Accordingly, VA's purported rescission of the manual provision was set aside.

*Fugere,* however, involved a provision granting a substantive right because its application directly affected whether a veteran's disability was to be retained or reduced. Here, the Manual M21–1 provisions and C & P policy on the development of claims relied upon by the appellant are purely interpretive. Together they constitute only "[a]n interpretative statement [which] simply indicates an agency's reading of a statute or a rule ... [and does] not intend to create new rights or duties, but only reminds affected parties of existing duties." *Paralyzed Veterans of America v. West,* 138 F.3d 1434, 1436 (Fed.Cir.1998) (quoting *Orengo Caraballo v. Reich,* 11 F.3d 186, 195 (D.C.Cir.1993).) The Manual M21–1 provisions and C & P policy do not speak to whether a specific disability is to be granted or denied; nor do they impinge upon a benefit or right enjoyed by the veteran as in *Fugere.* There is no ques-

tion that the provision at issue in *Fugere* was derived from the Secretary's authority pursuant to statutory law. *See* 38 U.S.C. § 1155 ("The Secretary shall adopt and apply a schedule of ratings or reductions in earning capacities for specific injuries or combination of injuries."). Indeed, while the Manual M21–1 provision at issue in *Fugere* derived from the Secretary's statutory authority and responsibility to define disabilities and specify their degrees, the regulations, Manual M21–1 provision, and C & P policy relied upon by this appellant are, at most, administrative directions to the field containing guidance as to the procedures to be used in the adjudication process. As in *Akin, supra,* they are but policy declarations which, in turn, "are but guidelines which even the issuing agency is not bound to unerringly follow."

Another provision found substantive by the Court is Manual M21–1, part VI, ¶ 7.46e, which provides,

If the evidence shows that the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development for a stressor is necessary.... If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke symptoms in everyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important [that] the stressor be described as to its nature, severity and date of occurrence.

*Hamilton,* 2 Vet.App. at 674; *see also Moreau* and *Hayes,* both *supra.* This provision replaced Manual M21–1, part I, ¶ 50.45, which had not required that an appellant's description of the claimed stressor be accepted as true unless found to be inconsistent with his circumstances of service. In *Hamilton,* we stated, "Substantive rules, those which *have the force of law* and *narrowly limit administrative action,* in the [Manual M21–1] are equivalent of Department regulations." 2 Vet.App. at 675. We thus held that a remand was warranted to apply the change in the substantive rule. *Id.*

The role of both provisions, the original and the one replacing it, is to define the evidentiary threshold for service connection for post-traumatic stress disorders and they have the force of law because they are promulgated under the Secretary's authority to define disabilities and because they create rights which are entirely consistent with and in furtherance of 38 U.S.C. § 1154(b) which provides:

In the case of a veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

As in *Fugere, supra,* these provisions dictate how benefits will be awarded for specific disabilities and are based upon the Secretary's authority to define disabilities. *See* 38 U.S.C. § 1155. In contrast, the Manual provisions and C & P policies on claim development do not create rights with respect to specific disabilities. Rather, they can serve only to interpret 38 U.S.C. § 5107 and "[i]f the rule is based on specific statutory provisions, and its validity stands or falls on the correctness of the agency's interpretation of those provisions, it is an interpretive rule." *United Technologies Corp. v. U.S. E.P.A.,* 821 F.2d 714, 719–20 (D.C.Cir.1987).

## B. Interpretive Provisions in Regulations, Manuals, and Agency Policies Which are Contrary to Statutes are Entitled to No Deference

Apart from the question whether interpretive rules create enforceable rights, which they do not, there remains the question of whether agency rules are entitled to deference. In *Chevron v. Natural Resources De-fense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court stated,

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*See also Smiley v. Citibank,* 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (applying *Chevron,* the Supreme Court upheld the Comptroller of the Currency's definition of "interest" as used in the National Bank Act); *Fort Stewart Schools v. FLRA,* 495 U.S. 641, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990). In this instance, this Court and the Federal Circuit have held that, with respect to § 5107, "the intent of Congress is clear [and] that is the end of the matter; for the Court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, supra.*

■ The Supreme Court has consistently held that for an agency's interpretation or action to be entitled to any deference or judicial enforcement, it must be consistent with the framework of a statute. *See FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981) ("[C]ourts are the final authorities on issues of statutory construction. They must reject administrative constructions, whether reached by adjudication or by rule-making, that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement."). *See also SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978) (SEC's construction of Securities Exchange Act of 1934, in favor of allowing it to suspend trading in certain stock, was found to be inconsistent with the statutory mandate); *FMC v. Seatrain Lines, Inc.,* 411 U.S. 726, 745–46, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973) (agency may not "bootstrap itself into an area into which it has no

jurisdiction by repeatedly violating its statutory mandate"); *NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965) (courts are "not obligated to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the Congressional policy underlying a statute."); *FTC v. Colgate Palmolive,* 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965) (courts are final authorities on statutory construction).

In *Brown v. Gardner,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), a case directly on point, the Supreme Court held that a longstanding VA regulation was not entitled to deference. The Supreme Court said: "A regulations's age is no antidote to clear inconsistency with a statute, and the fact, again, that [38 C.F.R.] § 3.358(c)(3) flies against the plain language of the statutory text, exempts courts from any obligation to defer to it." *Id.* at 122, 115 S.Ct. 552. This Court, in *Boyer v. West,* 12 Vet.App. 142 (1999), recently came to a similar conclusion. In *Boyer,* the appellant had bilateral hearing loss but was not totally deaf in both ears. Under the relevant statutes, his non-service-connected hearing loss would be treated as service-connected (and hence entitle him to a higher rating) only if the appellant were totally deaf in both ears. The appellant argued that the Secretary, by virtue of a provision of the Manual M21-1, Part VI, ¶ 8.08(b)–(e), had assumed the duty of considering a non-service-connected disability when assigning a rating. The Court rejected the appellant's argument and held that although a Manual M21-1 provision "might attempt to authorize a rating for non-service-connected hearing short of total deafness in both ears, such a provision would be *inconsistent* with the framework of 38 U.S.C. §§ 1110 and 1131 and *would be unlawful.*" *Id.* at 144 (emphasis supplied).

Any—and every—agency construction which is contrary to statute would necessarily be contradictory, impermissible, and not entitled to judicial deference or enforcement. *See Chevron, FEC, Gardner,* and *Boyer,* all *supra.* This is true regardless whether the rule is deemed substantive or interpretive.

*See Hamlet v. United States,* 63 F.3d 1097, 1105 (Fed.Cir.1995) (A provision of a personnel manual "is a regulation entitled to the force and effect of law if ... the provision does not contravene a statute."). Indeed, even if such consistency were not mandatory as a general rule, it still would be required here by the opening words of section 5107(a) itself: "Except when otherwise provided by the Secretary *in accordance with the provisions of this title* ...." (Emphasis added.) It would be *ultra vires* for the Secretary of Veterans Affairs, in the face of the affirmative commands of title 38, to ignore limitations placed by Congress upon his operations. "In the American system, government functionaries are entitled to exercise only such powers as are conferred on them, expressly or impliedly, by positive law." Norman J. Singer, Sutherland on Statutory Construction § 65.01 (5th ed.1992); *see also* 31 U.S.C. § 1341(a) (The Anti–Deficiency Act). Here, the interpretation of the claims development procedures of the referenced regulations, Manual M21-1, and the C & P policy urged upon us by the appellant stands in direct contravention of the command of 38 U.S.C. § 5107. To the extent that they may be read to require or permit the Secretary to assist a claimant who has not submitted a well-grounded claim pursuant to § 5107(a), such a reading would "[fly] against the plain language of the statutory text [and] exempt[ ] courts from any obligation to defer to it." *Gardner,* 513 U.S. at 122, 115 S.Ct. 552.

### III. CONCLUSION

This Court and the Federal Circuit have interpreted 38 U.S.C. § 5107 as conditioning the Secretary's duty to "assist ... in developing the facts pertinent to the claim" upon the submission by the claimant of well-grounded claim. Although the C & P "full development" policy directive was issued four months after this Court's decision in *Grivois,* we can only assume that this action was inadvertent or, at worst, inattentive, for neither the Secretary nor this Court is free to ignore a condition precedent established by Congress. Congress, of course, can choose to change or eliminate the well-grounded claim requirement altogether. Indeed, it is possible that after evaluating such consider-

ations as fairness, equity, and the personnel, facility, and financial expenditures which would be required, Congress might well opt for requiring the Secretary to assist and examine all veterans, regardless of whether well-grounded claims have been submitted. But that balancing process is the responsibility of the legislative branch, not this Court. It is our responsibility to interpret existing law and to apply it to the record before us. Having done so, we can only conclude that under section 5107, absent the submission and establishment of a well-grounded claim, the Secretary cannot undertake to assist a veteran in developing facts pertinent to his or her claim. Accordingly, any perceived or actual failure by the Secretary to render assistance in the absence of a well-grounded claim cannot be legal error. For these reasons, the September 6, 1997, decision of the BVA must be and is AFFIRMED.