James M. RICHARDS, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–821.

United States Court of Veterans Appeals.

July 15, 1996.

Patrick A. Fayle, Washington, DC was on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, were on the brief, Washington, DC for appellee.

Before KRAMER, FARLEY, and IVERS, Judges.

KRAMER, Judge:

The appellant, James M. Richards, Jr., appeals a July 31, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which denied entitlement to waiver of recovery of loan guaranty indebtedness. Record (R.) at 7–14. The Court has jurisdiction under 38 U.S.C. § 7252(a).

## I. BACKGROUND

The appellant served on active duty from August 1942 to July 1944. R. at 27. In October 1982, VA assigned a 100% schedular rating for the appellant's service-connected anxiety reaction condition. R. at 70. In September 1983, he requested an appraisal for property located at 26600 S.E. Currin Road, Escatada, Oregon [hereinafter referred to as the Oregon property]. R. at 76. In October 1983, VA approved a guaranteed loan from the Old Stone Mortgage Corporation in the amount of $65,000 to refinance the Oregon property. R. at 87–88. An October 1983 message from the lender to the VA Loan Guaranty Division reflects that the owners of the Oregon property, Gerardo and Andrea Baron, had agreed to quitclaim the property to the appellant at closing. R. at 90. In October 1983, the appellant executed a 30–year note in the principal amount of $65,000, payable to the Old Stone Mortgage in monthly installments of $719.03, including interest (R. at 82), and secured by a deed of trust on the Oregon property (R. at 95–98). A November 23, 1983, settlement statement reflects that the appellant received $7,781.25 at settlement. R. at 92.

In March 1986, the appellant submitted a VA Form 21–686c, "Declaration of Marital Status," listing his address as P.O. Box 1291, Coolidge, Arizona 85228. R. at 104. On May 23, 1986, a "Notice of Default" was sent by the lender to VA. R. at 102. On June 12, 1986, VA received a "Notice of Intention to Foreclose" from the lender. R. at 106. A July 15, 1986, "Report of Contact" from a VA official at the Tucson, Arizona Medical Center listed the appellant's address as P.O. Box 1291, Coolidge, Arizona 85228, and indicated that his VA claims folder would be forwarded from the VA regional office (RO) in Portland, Oregon, to Phoenix, Arizona. R. at 116. A similar document was prepared on July 29,

1986. R. at 120. In a letter dated July 31, 1986, and addressed to P.O. Box 2, Estacada, Oregon 97023 (an address which the appellant had previously used for correspondence between himself and VA regarding his service-connected disability, see, e.g., R. at 51, 62, 68), VA advised the appellant that he had a number of alternatives to foreclosure. The record contains no evidence that the letter was returned as undelivered.

A "Notice of Default and an Election to Sell" was prepared by the foreclosure trustee on September 8, 1986. R. at 135–37, 139. In a September 9, 1986, affidavit, the trustee stated that he had notified the appellant of the proposed foreclosure by mailing a notice to P.O. Box 2, Estacada, Oregon 97023, by first class mail and certified return receipt. R. at 147. A foreclosure sale was held in January 1987 (R. at 135, 163–64, 185), resulting in a loan guaranty indebtedness of $22,-912.95. R. at 187. In January 1988, VA sent the appellant notice that his VA benefits would be withheld as an offset to his $22,-912.95 loan guaranty indebtedness. The letter was addressed to P.O. Box 983, Florence, Arizona 85232. R. at 187.

Later that same month, the appellant filed a request for a waiver of loan indebtedness. R. at 191–92, 194. His request for waiver was referred to a VA indebtedness committee (R. at 189), and in May 1988 the appellant's request for a waiver was denied based upon a determination that he had acted in bad faith and that his actions had contributed directly to the creation of the debt (R. at 196–97).

In June 1990, the appellant filed a "Statement in Support of Claim" in which he requested the Committee on Waivers and Compromises to reconsider granting him a waiver of his loan indebtedness. R. at 234. In March 1991, that Committee again denied the appellant's request for a waiver. R. at 248–49. The appellant filed a Notice of Disagreement in April 1991 (R. at 253–56), and an appeal to the BVA in September 1991 (R. at 267).

At a January 1992 BVA hearing, the appellant acknowledged, inter alia, that he had moved to Arizona in August 1984 and had

gone into default in March 1986. R. at 276. The appellant also stated that, although he had moved to Arizona in 1984, he had left forwarding addresses where he could be reached and that VA was always able to correspond with him. R. at 286. In December 1993, the BVA remanded the matter for an updated financial status report and a re-adjudication of the appellant's request for waiver of loan guaranty indebtedness after taking into consideration the appellant's service-connected psychiatric disability. R. at 302–04. In January 1994, the Committee affirmed its earlier denial of the appellant's request for a waiver. R. at 318. On July 31, 1994, the BVA, in its decision here on appeal, determined that the appellant had acted in bad faith, and thus denied his request for a waiver of recovery of the loan guaranty indebtedness. R. at 7–14.

## II. ANALYSIS

### A.

As a preliminary matter, it should be noted that the appellant's counsel contends for the first time on appeal that "it is unknown" whether the appellant received some or all of the correspondence concerning the default and foreclosure on the Oregon property. Brief at 7, 9. With respect to this contention, the Court notes that: (1) the appellant testified at the BVA hearing that, although he moved to Arizona in 1984, he had left forwarding addresses, and VA was always able to correspond with him (R. at 286); and (2) there is no evidence in the record to indicate that the appellant never received notice of the default or foreclosure. Even more conclusive, however, is the fact that this issue was not raised before the BVA, and is therefore not properly before the Court. *See Horowitz v. Brown*, 5 Vet.App. 217, 225 (1993); *Branham v. Derwinski*, 1 Vet.App. 93, 94 (1990).

### B.

Pursuant to 38 U.S.C. § 5302(b),

> With respect to any loan guaranteed, insured, or made under chapter 37 of this title, the Secretary shall ... waive payment of an indebtedness to the Department by the veteran ... following default and loss of the property, where the Secretary determines that collection of such indebtedness would be against equity and good conscience.

However, a threshold determination must be made under 38 U.S.C. § 5302(c) which states:

> The recovery of any payment or the collection of any indebtedness ... may not be waived under this section if, in the Secretary's opinion, there exists in connection with the claim for such waiver an indication of ... bad faith on the part of the person or persons having an interest in obtaining a waiver of such recovery....

*See East v. Brown*, 8 Vet.App. 34, 39 (1995); *Farless v. Derwinski*, 2 Vet.App. 555, 556 (1992). Further, 38 C.F.R. § 1.965(b) (1995) states in relevant part:

> In applying this single standard for all areas of indebtedness, the following elements will be considered, any indication of which, if found, will preclude the granting of waiver:
>
> . . . .
>
> (2) *Bad faith.* This term generally describes unfair or deceptive dealing by one who seeks to gain thereby at another's expense. Thus, a debtor's conduct in connection with a debt arising from participation in a VA benefits/services program exhibits bad faith if such conduct, although not undertaken with actual fraudulent intent, is undertaken with intent to seek an unfair advantage, with knowledge of the likely consequences, and results in a loss to the government.

The Board denied the appellant's request for a waiver because it found that the appellant had acted in "bad faith," citing the VETERANS BENEFITS ADMINISTRATION CIRCULAR 20–90–5 (Feb. 12, 1990) [hereinafter VA CIRCULAR] which defines bad faith to include "a willful intention to either seek an unfair advantage *or* to neglect or refuse to fulfill some duty or contractual obligation" (emphasis added). However, the operative language in 38 C.F.R. § 1.965(b)(2) limits bad faith to cases in which there is an intent to seek an unfair advantage, the same test as *only* one of the two alternative tests provided for under the VA CIRCULAR. The second alterna-

tive test under the VA CIRCULAR would appear to permit a bad faith determination for mere negligent failure to fulfill a duty or contractual obligation. In addition to being oxymoronic (willful negligence is a contradiction in terms), this is a more veteran-adverse predicate than intent to seek unfair advantage. Because the VA CIRCULAR is therefore inconsistent with the regulation to the extent of the second alternative test, it cannot be an appropriate basis for a bad faith determination. *See Earle v. Brown,* 6 Vet. App. 558, 562 (1994) (finding that it is this Court's practice to invalidate, on case-by-case basis, those substantive provisions of VA's adjudication manual, adverse to appellant, which have not been adopted in accordance with the Administrative Procedure Act); *Fugere v. Derwinski,* 1 Vet.App. 103, 110 (1990); *see also Austin v. Brown,* 6 Vet.App. 547, 552 (1994) (finding that where BVA failed to apply facially applicable regulations, or to give reasons or bases explaining why such regulations were not applicable, its decision on appeal must be set aside). Because the Court cannot determine under which of the two tests found in the VA CIRCULAR the appellant was found to have acted in bad faith, the matter must be remanded for a new determination based on section 1.965(b)(2). Such determination shall be accompanied by an adequate statement of reasons or bases, including a clear analysis of the evidence which it finds persuasive or unpersuasive with respect to that issue. *See Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990).

## III. CONCLUSION

Upon consideration of the record and the filings of the parties, the Board's May 26, 1993, decision is VACATED and the matter is REMANDED for proceedings consistent with this decision. On remand, the appellant is free to present additional evidence and argument. *See Quarles v. Derwinski,* 3 Vet. App. 129, 141 (1992).