Harold STUCKEY, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 96–1373.

United States Court of Appeals
for Veterans Claims.

Argued July 29, 1999.

Decided Nov. 17, 1999.

Barbara J. Cook for the appellant.

Gary E. O'Connor, with whom Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Joan E. Moriarty, Deputy Assistant General Counsel, were on the brief, for the appellee.

Michael P. Horan was on the brief for the Paralyzed Veterans of America as amicus curiae.

Kenneth M. Carpenter was on the brief for the National Organization of Veterans' Advocates as amicus curiae.

Michael E. Tankersley was on the brief for the National Gulf War Resources Center, Inc., as amicus curiae.

Rick Surratt was on the brief for the Disabled American Veterans and the Veterans of Foreign Wars as amicus curiae.

Barton F. Stichman was on the brief for the American Legion and the National Veterans Legal Services Program as amici curiae.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, Harold Stuckey, appeals a June 1996 decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a back disability and for residuals of a forehead injury. On appeal, the appellant has contested only the Board's denial of his claim for service connection for a back disability. Consequently, his claim for residuals of a forehead injury will be considered abandoned. *Bucklinger v. Brown,* 5 Vet.App. 435 (1993). There are no issues before the Court as to the merits of the appellant's claim. In fact, the appellant has conceded that his claim is not well grounded. The issues before the Court concern whether or not the appellant may raise issues of procedure for the first time before this Court which were not raised before the Board and, hence, were not part of the decision below. For the following reasons, the Court will affirm the decision of the BVA.

## I. FACTS

The appellant had active service in the U.S. Navy from May 1946 to March 1948. His induction examination found no physical defects. His service medical records do not reflect that he received treatment for any condition relevant to this appeal. In March 1948, a physical examination found the appellant physically qualified for transfer, and no defects were noted. Four days later, the appellant was examined again and found physically qualified for discharge and his spine and extremities were found to be normal.

In June 1992, the appellant claimed service-connected disability benefits for a back injury and a laceration to his forehead. In September 1992, a VA regional office (VARO) wrote the appellant a letter stating:

> We are working on your claim. However, we need more information before we can finish our action.
>
> Please send us evidence showing that your claimed disabilities have been treated since your discharge from service.
>
> The best types of evidence to give us are statements from doctors who have treated you since your discharge. The statements should show dates of examination or treatment, findings, and diagnoses.

Please send us this evidence as soon as possible, preferably within 60 days.

Later that month, the appellant responded in a letter to his veterans service organization, the Disabled American Veterans (DAV). Throughout the administrative process, the appellant was actively represented by the DAV through an accredited service representative. *See generally* 38 U.S.C. § 5902. DAV then apparently forwarded the letter to the VARO. This letter stated that he was on the U.S.S. *Missouri* in the fall of 1946 when the ship was hit by a round fired from another ship during training. He said he "was knock[ed] out of my bunk about ten feet hight [sic] from the steel floor and hit on my back, I was treated in sick bay and returned to duty." *Id.* He added that "my disk was injured quite awhile [sic] ago as it shows rather advanced [illegible] and degenerative arthritis, LS [lumbosacral] spine." *Id.*

In October 1992, the RO denied the appellant's claims and explained:

Service medical records show no complaint, treatment or diagnosis of a back injury or laceration to the right forehead. Discharge examination from service is negative for any such claimed condition. The veteran's statement is noted. No additional evidence has been presented. The veteran has not presented any medical evidence demonstrating the claimed conditions from the time of service to the present.

The accompanying cover letter further indicated that the "evidence does not establish service connection" for the claimed disabilities, and added that "YOUR SERVICE MEDICAL RECORDS WERE REVIEWED. EVIDENCE DOES NOT SHOW A BACK INJURY AND LACERATION OF THE RIGHT FOREHEAD." In December 1992, the VARO received a change of address announcement from Dr. Wallace E. Johnson, an orthopedic surgeon, with the handwritten note: "Mr. Stuckey's Doctor."

In February 1993, the appellant filed a timely Notice of Disagreement (NOD) to initiate his appeal to the Board. In his NOD, the appellant stated:

Please accept this as a notice of disagreement in regard to the rating decision of 10–22–92 denying me service connection for a back condition and residuals of trauma to the head.

When my claim[s] folder was reviewed by my representative, it was noted that the records of my visits to sick bay for these conditions are not included in my service medical records. To assist me in my claim, I am requesting that your office do what is necessary to obtain these records either from the service or [from the National Personnel Records Center].

After receiving the appellant's NOD, the VARO sent the appellant and his representative a Statement of the Case (SOC). The SOC instructed: "This is not a decision on the appeal you have initiated. It is a 'Statement of the Case' which the law requires us to furnish to help you in completing your appeal. Please read the forwarding letter carefully, as well as the instructions on the enclosed appeal form." The SOC then characterized the issue on appeal as "Service connection for back injury and laceration right forehead." The SOC then provided the appellant and his accredited representative with some basic tenets of veterans law regarding this issue such as:

Service connection may be granted for disability resulting from disease or injury incurred or aggravated by service. (38 U.S.C. § 310)

. . . .

Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, established that the disease was incurred in service. (38 C.F.R. § 3.303(d))

. . . .

To establish service connection for a condition, symptoms during service, or within a reasonable time thereafter, must be identifiable as manifestations of a chronic disease or permanent effects of an injury. Further, a present disability must exist and it must be shown that the present disability is the same disease or injury, or is the result of disease or injury incurred in or made worse by the veteran's military service. (38 C.F.R. § 3.303)

Finally, the SOC provided the reasons behind the VARO's decision, "Service medical records, and the record itself are entirely absent of evidence of claimed back injury or laceration of the right forehead. There is no evidence of record to demonstrate the claimed conditions in service."

In his substantive appeal, filed in March 1993, the appellant stated that a medic told him during service that if his back injury was bad he would be transferred to a facility on land, but the appellant "did not want to leave the USS *Missouri* in 1946[,] the best ship in the fleet." Since he did not want to leave his ship, the appellant stated that the medic advised him to participate in certain rehabilitative exercises, such as swimming. At the end of his Substantive Appeal, the appellant wrote:

> Disk was injured quite awhile ago it show advanced deterioration at present patient is disabled, this is a permanent type of disability, prognosis remains guarded[.][Sic]
>
> Wallace E. Johnson MD    Dr. Moore
> Orthopedic Surgeon    Henry Ford Hospital
> [address]
> [telephone number]

In May 1993, the appellant appeared at a personal hearing with his representative. He testified that he had been knocked from the top bunk when a shell hit his ship during training exercises. He stated that he had fallen at least six feet and had seen stars after landing on his back. He recalled that he had not felt pain until about a week later when it felt "like something was pulled, and I was kind of walking one-sided, with a limp." He said that he had

sought medical treatment, but that he had been told that if he wanted military treatment for his back he would be sent ashore. Because he had not wanted to be transferred from the U.S.S. *Missouri,* he had gone to civilian doctors during leave in New York, had taken "Doehn's [sic] pills" and aspirin, had worn a corset, and had treated himself with hot and cold packs. When asked if he had tried to obtain any of the medical records from New York, he responded: "No. That was almost an impossibility." Since military service, the appellant related that he first worked as a barber and then as a bus operator. He stated that he had to quit his job as a barber because he could not stand for long periods of time. The appellant expressed that after his military service, he did not seek treatment for his back condition because he was concerned that he might not be able to obtain a job if his employers knew that he had a back condition. Therefore he said he was first diagnosed by his physician, Dr. Johnson, for his back condition after he had retired in 1982, some 34 years after his discharge. The appellant recounted that Dr. Johnson had told him that he had no discs because they had completely disintegrated. He also referred to treatment for his back problems at the Henry Ford Hospital, and said that after nine doctors had "looked at that back when I was applying for Social Security" they had agreed that his discs were gone.

In June 1993, the hearing officer denied the appellant's claim explaining that "at this time the veteran presented no evidence to show that either condition presently existed or that it has [sic] continuously existed since its alleged onset during service." The officer found that the evidence of record consisted solely of the appellant's uncorroborated statements which, "in the absence of any other supporting medical evidence (either from the service medical records or following thereafter) fails to provide a reasonable basis to conclude that the alleged (currently not shown) conditions were the result of the veteran's service". Furthermore, the

hearing officer noted that the appellant had not identified "any relevant evidence which would tend to support [his] claim."

Shortly thereafter, the VARO issued a Supplemental Statement of the Case (SSOC) which stated that "there is no evidence to show that either condition presently existed or that it was continuously existent since service to the present," and "in the absence of any supporting medical evidence," the appellant's statements and testimony were insufficient to provide a reasonable basis for service connection. With the exception of an excerpt from a published history of the U.S.S. *Missouri*, which the appellant appended to his brief on appeal, no additional evidence was provided by the appellant or his representative.

In June 1996, the Board found that the appellant had failed to submit a well-grounded claim. The Board found that the record did not contain competent medical evidence that the appellant had suffered an in-service back or forehead injury, and that there was no competent medical evidence of a nexus between the appellant's current disabilities and service.

In October 1996, the appellant filed a timely Notice of Appeal. In his brief, the appellant raised several procedural errors in the adjudication process which he had not raised before the Board. In October 1998, this Court ordered the parties to file supplemental briefing. Specifically, the Court ordered the parties to address the following issues:

(1) May the Court consider issues, arguments, or challenges not raised before the Board? May an appellant who had not raised an issue, argument, or challenge before the Board, raise that issue, argument, or challenge in a motion for reconsideration with the Chairman of the Board? Would this Court have jurisdiction to hear an issue, argument, or challenge presented to the Chairman in a motion for reconsideration but not previously presented to the Board. See *Collaro* [*v. West*, 136 F.3d 1304 (Fed.Cir.

1998)] and *Ledford* [*v. West*, 136 F.3d 776 (Fed.Cir.1998)].

(2) Assuming the Court finds the issue properly before the Court, are the provisions of the M21–1 regarding assistance to claimants in processing claims procedural, interpretative, or substantive[?] If the provisions are substantive, what rights do they confer to claimants? Have these rights been violated in this case? What discretion is vested in the adjudicator in implementing these provisions?

The Court also invited any interested amici curiae to submit memoranda on these issues. In December 1998, the Court granted the appellant's motion to stay proceedings pending his motion for reconsideration with the Chairman of the Board of Veterans' Appeals pursuant to *Cerullo v. Derwinski*, 1 Vet.App. 195 (1991). In January 1999, the Secretary advised the Court that the Chairman had denied the appellant's motion for reconsideration. Subsequently, both parties and several amici curiae filed memoranda addressing the issues outlined by the Court's order.

## II. ANALYSIS

On appeal to this Court, the appellant raises for the first time several procedural errors in the administrative handling of his claim. In essence, these alleged errors can be boiled down to a failure on the part of VA to advise him that he must provide the required medical evidence in order to well-ground his claim, that is, to connect his present disability with the putative incident aboard the U.S.S. *Missouri*. See generally, *Caluza v. Brown*, 7 Vet.App. 498 (1995) (requiring competent medical evidence of a current disability and a relationship between that disability and military service). The appellant did not raise these errors before the Board. Before the Court may consider the alleged procedural errors, the Court must first decide whether or not the failure to raise these procedural errors before the Board precludes

him from raising them for the first time on appeal.

■ The role of this Court is to correct errors of the Board. This Court cannot subsume the Board's role as fact-finding adjudicators. We cannot directly review VARO decisions but reach them only to the extent the VARO decision is properly part of the claimant's appeal to the Board. Issues which were raised after a Board decision are not, and cannot, be part of that decision.

■ Once a VARO has rendered a decision regarding a claim, the first step towards securing this Court's jurisdiction over that claim begins with the filing of a timely NOD. *See, e.g., Fenderson v. West,* 12 Vet.App. 119, 128 (1999). An NOD is defined as merely:

> A written communication from a claimant or his or her representative expressing dissatisfaction with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result. . . . While special wording is not required, the Notice of Disagreement must be in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review. If the agency of original jurisdiction gave notice that adjudicative determinations were made on several issues at the same time, the specific determinations with which the claimant disagrees must be identified. For example, if service connection was denied for two disabilities and the claimant wishes to appeal the denial of service connection with respect to only one of the disabilities, the Notice of Disagreement must make that clear.

38 C.F.R. § 20.201 (1998). This Court has consistently interpreted this definition of an NOD broadly. *See generally, Beyrle v. Brown,* 9 Vet.App. 24, 27–28 (1996).

Once a claimant has filed an NOD, the responsibility shifts to the VARO to issue an SOC. 38 U.S.C. § 7105(d)(1). The SOC must contain:

> (A) A summary of the evidence in the case pertinent to the issue or issues with which disagreement has been expressed.
>
> (B) A citation to pertinent laws and regulations and a discussion of how such laws and regulations affect the agency's decision.
>
> (C) The decision on each issue and a summary of the reasons for such decision.

*Id.* The purpose of the SOC is to frame the issues on appeal and assist the claimant in preparing arguments to the Board. *See* 38 C.F.R. § 19.29.

When the VARO issues an SOC, the claimant must then file a Substantive Appeal. 38 U.S.C. § 7105(d)(3). In the Substantive Appeal, the claimant "should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case. The benefits sought on appeal must be clearly identified." *Id.* In addition, the Secretary has promulgated a regulation which further defines what the claimant is required to put in the Substantive Appeal. "To the extent feasible, the argument should be related to specific items in the Statement of the Case and any prior Supplemental Statements of the Case. The Board will construe such arguments in a liberal manner for purposes of determining whether they raise issues on appeal. . . ." 38 C.F.R. § 20.202. The Court notes that neither this Court nor the United States Court of Appeals for the Federal Circuit (Federal Circuit) has discussed this section regarding whether or not a claimant fulfilled the duty to make "specific allegations of error of fact or law." *See generally, Collaro, supra* (in finding that the Court had jurisdiction to consider issues which the appellant did not raise to the Board in his Substantive Appeal, the Federal Circuit failed to discuss the application of these provisions); *Ledford,* 136 F.3d at 780 n. 6 (citing regulation without discussion). However, in *Collaro,* the Federal Circuit's finding that this Court had jurisdiction to consider arguments which the appellant

did not specifically raise to the Board in his Substantive Appeal strongly implied that, later if not sooner during the administrative adjudication, the claimant must "cut the rough stone" of his NOD to reveal the arguments upon which his appeal rested. *See Collaro,* 136 F.3d at 1309–10. To date, this Court has not enforced the terms of 38 U.S.C. § 7105(d)(3) requiring a claimant to present "specific allegations of error of fact and law" to the Board on appeal, although the Court has dismissed appeals under the similar doctrine of administrative exhaustion. On the other hand, the Court notes that these provisions use the verb "should" which raises the question of whether this provision actually requires a claimant to make "specific allegations of error of fact or law" or merely presents a "moral obligation" to raise such errors. *See* BLACK'S LAW DICTIONARY, 1379 (6th ed.1990) (defining the word "should" as creating "usually no more than an obligation of propriety or expediency, or a moral obligation, thereby distinguishing it from 'ought'"). In any event where the claimant does file a Substantive Appeal, that document can be considered as indicative of what the claimant believes the factual and legal issues to be before the Board. In this sense, it limits what the Board will adjudicate.

After the claimant files the Substantive Appeal, the Board must then render a decision. However, even at this stage, a claimant can present to the Board his version of the issues, as the appellant did in this case. If both the Secretary and the claimant have fulfilled their respective obligations, the points at issue should be defined and refined for the Board to review and resolve. In essence, this process is parallel to the pleading system of trial courts, with VA guiding the claimant and his representative to identify, with some degree of specificity, the sources of his dissatisfaction with the VARO decision. The Court notes that it is the responsibility of both VA in the SOC and the claimant in the substantive appeal to identify issues of fact and law. In rendering its decision,

the Board is then required to provide "a written statement of the its findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1).

If the Board renders an adverse decision, the appellant may either file a motion for reconsideration with the Chairman of the Board or file a Notice of Appeal to this Court.

This Court's jurisdiction is governed by 38 U.S.C. § 7252. This section provides:

(a) The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. The Secretary may not seek review of any such decision. The Court shall have the power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.

(b) Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising this schedule.

(c) Decisions by the Court are subject to a review as provided in section 7292 of this title.

38 U.S.C. § 7252. The Court's authority to review a Board decision is further described by 38 U.S.C. § 7261. The section provides:

(a) In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall—

(1) decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary;

(2) compel action of the Secretary unlawfully withheld or unreasonably delayed;

(3) hold unlawful and set aside decisions, findings (other than those described in clause (4) of this subsection), conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be—

   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

   (B) contrary to constitutional right, power, privilege, or immunity;

   (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or

   (D) without observance of procedure required by law; and

(4) in the case of a finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such finding if the finding is clearly erroneous.

(b) In making the determinations under subsection (a) of this section, the Court shall take due account of the rule of prejudicial error.

(c) In no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the Court.

(d) When a final decision of the Board of Veterans' Appeals is adverse to a party and the sole stated basis for such decision is the failure of the party to comply with any applicable regulation prescribed by the Secretary, the Court shall review only questions raised as to compliance with and the validity of the regulation.

38 U.S.C. § 7261.

The plain meaning of these sections clearly limits this Court's jurisdiction to review a "decision of the Board." 38 U.S.C. § 7252(a). Nonetheless, from its inception, the Court has exercised its jurisdiction over issues which were implicit in the Board decision but which the Board did not specifically discuss. *See, e.g., Fanning v. Brown,* 4 Vet.App. 225, 229 (1993) (holding that the Board failed to provide adequate reasons and bases for its decision by not discussing the applicability of a total disability rating based on individual unemployability); *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991) (holding that the Board is "not free to ignore its own regulations"); *Akles v. Derwinski,* 1 Vet.App. 118, 121 (1991). In *Akles,* the Court explained:

> In the brief to this Court, the Secretary argues that the question of entitlement to special monthly compensation under 38 U.S.C. § 314(k) was not raised below and that "this Court should summarily reject this new issue." We disagree; this argument completely ignores the non-adversarial nature of the proceedings below and the concomital duty to assist that statute and regulations impose upon the Secretary.

> There is no requirement in the law that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits. Section 241(2) places the burden on the Secretary to "distribute full information to eligible veterans ... regarding all benefits and services to which they may be entitled under laws administered by the Department of Veterans Affairs." 38 U.S.C. § 241(2). The Secretary's obligation to ensure that each veteran is informed of all benefits to which he is entitled is in keeping with the essence of the VA system, which allows veterans to pursue their claims in a non-adversarial setting. Moreover, as noted above, the Secretary has an additional statutory duty to assist claimants "in developing the facts pertinent to the claim." 38 U.S.C. § 3007(a). To require that veterans enumerate which sections they found

applicable to their request for benefits would change the atmosphere in which claims are adjudicated. Veterans would be required to develop expertise in laws and regulations on veterans benefits before receiving any compensation. Such a fundamental change would have to be instituted by the Legislative Branch; it would be beyond the charter of the Department or this Court to accomplish unilaterally.

*Akles*, 1 Vet.App. at 120–21. In exercising its jurisdiction over these arguments, the Court primarily relied upon 38 U.S.C. § 7104(d) which requires the Board to provide adequate reasons and bases for its decision based on "all material issues of fact and law presented on the record." Therefore, under the case law established by this Court, the Board erred if it failed to enforce any law regarding a claim for benefits, whether or not the appellant raised arguments or challenges to that law to the Board, i.e., whether that issue was contained in the appellant's NOD or Substantive Appeal, if it was presented by the record. At the same time, the Court has declined to exercise jurisdiction if such argument or challenge was not so raised. *See, e.g., Evans v. West*, 12 Vet.App. 22 (1998); *Richards v. Brown*, 9 Vet.App. 255 (1996).

The Federal Circuit has recently discussed this Court's jurisdiction in the cases of *Ledford* and *Collaro*, both *supra*. In *Ledford*, this Court found that it lacked jurisdiction to hear a "CUE claim" which was raised for the first time on appeal. *Ledford*, 136 F.3d at 778. The Federal Circuit affirmed the Court's decision finding that the appellant was effectively attempting to appeal a 1981 VARO decision terminating the appellant's total disability rating based on individual unemployability (TDIU), a decision over which the Court did not have jurisdiction. The Federal Circuit held that the Court's jurisdiction is limited to the "power to affirm, modify, or reverse *a decision of the Board* or to remand the matter as appropriate." 136

F.3d at 779 (quoting 38 U.S.C. § 7252(a)). The Federal Circuit then stated, "Thus, the court's jurisdiction is *premised on and defined by the Board's decision* concerning the matter being appealed." *Id.* (emphasis added). The Federal Circuit concluded that since the appellant's claim for TDIU had not been before the Board, he was precluded from raising that claim to the Court. Furthermore, the Federal Circuit held that in order for this Court to exercise jurisdiction, the appellant must have filed a valid NOD on the particular claim being appealed. Citing to *Grantham v. Brown*, 114 F.3d 1156 (Fed.Cir.1997), the Federal Circuit noted that a veteran's overall claim for benefits is composed of one or more issues. *Ledford*, 136 F.3d at 780. For this Court to have jurisdiction, the appellant must file an NOD which expresses disagreement with the particular claim on appeal, although the appellant need not support his contentions with "legal reasoning." *Id.*

The Federal Circuit's decision in *Ledford* was based in part on the fact that the appellant had failed to exhaust his administrative remedies. In *Ledford*, the Federal Circuit stated:

The Supreme Court has stated that "[t]he basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972). The application of the doctrine is "intensely practical" and is to be applied when further agency consideration concerning an issue would further the doctrine's underlying policies. *Bowen v. City of New York*, 476 U.S. 467, 485, 106 S.Ct. 2022, 2032, 90 L.Ed.2d 462 (1986).

*Id.* at 780. Thus, unless an appellant has exhausted his administrative remedies, he is generally prohibited from raising issues anew in this Court. Most importantly, the

Federal Circuit held that the doctrine of exhaustion of administrative remedies is not jurisdictional, but discretionary. *Id.* (citing *Allied–General Nuclear Serv. v. United States,* 839 F.2d 1572, 1575 (Fed. Cir.1988)). The Federal Circuit concluded that the appellant in *Ledford* had failed to raise his alleged constitutional and Administrative Procedure Act (APA) violations to the agency, thereby failing to exhaust his administrative remedies, and thus the Court properly declined to hear arguments relating to those violations. *Id.* at 782. In other words, if the appellant fails to raise an argument or challenge to the Board, the Court may decline to hear that argument or challenge on appeal.

One week after the Federal Circuit issued *Ledford,* that Court rendered its decision in *Collaro* which appears inconsistent in many respects to that Court's analysis in *Ledford.* Like the appellant in *Ledford,* the appellant in *Collaro* also argued that his rights under the APA and the Constitution had been violated. This Court had held that it did not possess jurisdiction to hear the appellant's arguments because they were not raised to the Board. Unlike the decision in *Ledford,* however, the Federal Circuit in *Collaro* found that this Court had jurisdiction to hear those challenges to the Board's decision. In *Collaro,* the Federal Circuit echoed this Court's analysis in *Akles* by noting that at the administrative level, veterans often do not possess the "knowledge, motivation, mental acuity[,] and legal counsel necessary to . . . correctly challenge the agency's action." 136 F.3d at 1309. Therefore, when the appellant filed a "vague NOD" to the VARO's decision, this action effectively placed all issues on appeal before the Board and eventually, this Court. *Id.* Although the appellant's NOD did not contemplate any of these issues, as the *Ledford* appellant's NOD did not contemplate those same issues, the Federal Circuit nevertheless held, "In the context of what was supposed to be a nonadversarial, *ex parte,* paternalistic system for adjudicating veterans' claims, Collaro's 1989 NOD sufficient-

ly identified the constitutional and notice and rule-making issues that he had with the agency's March 28, 1989 letter." *Id.* at 1309–1310. The Federal Circuit then made an attempt to reconcile this apparent conflict with its earlier decision in *Ledford* by stating, "Unlike Ledford's 1991 NOD, which specifically identified and thus limited his issue to the effective date of his disability rating, Collaro's NOD was not so narrowly limited." *Id.* Notably, the Federal Circuit did not discuss the doctrine of administrative exhaustion. Furthermore, the Federal Circuit noted that the appellant had attempted to raise these specific issues to the Chairman on a motion for reconsideration while the appellant in *Ledford* had not.

The Federal Circuit's decision in *Collaro* thus raises the question whether or not an appellant who did not present an issue to the Board may present that issue to the Chairman of the Board in a motion for reconsideration in order to vest jurisdiction of that issue in this Court. The Federal Circuit previously has held that an "action by the Chairman is not a decision of the Board" and, therefore, this Court does not have jurisdiction to review the Chairman's actions, if it did not have jurisdiction over the underlying Board decision. *Mayer v. Brown,* 37 F.3d 618, 620 (Fed. Cir.1994). The Federal Circuit explained that while 38 U.S.C. § 7261 allows the Court to review "conclusions, rules and regulations issued or adopted by . . . the Chairman of the Board," this section "merely sets out the scope of the review to be conducted by the [Court] in cases within its jurisdiction; it does not itself create jurisdiction in the [Court]." *Id.* In *Collaro,* the Federal Circuit did not explain how its holding was consistent with *Mayer.*

In light of the foregoing, the Court will now address whether or not it has jurisdiction to consider the constitutional and APA challenges raised by the appellant. As illustrated above, the precedent which this Court must follow is not entirely consistent. Despite these inconsistencies, the

Court must interpret the law as consistent and render a decision in this case.

In reconciling the above precedent, the Court must focus on what is consistent rather than what is not. In *Ledford*, the Federal Circuit found that the Court possessed jurisdiction to review a Board decision which was the subject of a post-November 1988 NOD but "did not err in declining to exercise jurisdiction over these challenges" based on the doctrine of administrative exhaustion. 136 F.3d at 782. In *Collaro*, the Federal Circuit found that the Court erred by finding that it did not have jurisdiction to review the veteran's challenges. 136 F.3d at 1310. The Federal Circuit stated that these challenges were "reviewable" but did not hold that this Court could not decline jurisdiction based on the doctrine of administrative exhaustion if they were not presented to the Board. *Id.*

■■■ After a careful analysis of all the above-referenced precedent, the Court holds that it possesses jurisdiction to review all challenges and arguments relating to a particular claim, assuming all other jurisdictional requirements are met. However, the Court generally will decline to exercise jurisdiction based upon the doctrine of administrative exhaustion when the appellant has failed to present those challenges and arguments, either expressly or implicitly, to the Board. Of course, a general rule permits exceptions. For example, if the Board commits a procedural error after the appellant has filed his NOD and Substantive Appeal, the Court would be more inclined to exercise its jurisdiction in that instance. *Cf. Thurber v. Brown*, 5 Vet.App. 119, 126 (1993) (Board erred by failing to give notice and reasonable opportunity to respond to medical treatises relied upon by the Board which were not in the record on appeal). Another example of an exception could be a case such as *Akles* where the record on appeal clearly and unmistakably presents an issue to the Board. *Akles*, 1 Vet.App. at 121.

■■ This general rule is consistent with the applicable statute which states that the appellant "should set out," for the consideration of the Board, "specific allegations of error of fact or law, such allegations related to specific items in the statement of the case." 38 U.S.C. § 7105(d)(3). While the appellant is never required to cite to particular laws or regulations, he or she must be able to express the reasons why the VARO erred. This allows the Board to carefully scrutinize these points of contention and develop a factual record for this Court to review. As noted by the Federal Circuit, the doctrine of administrative exhaustion is "intensely practical". *See Ledford*, 136 F.3d at 780. The purpose of this doctrine is to define and refine the issues which identify the appellant's challenges to the agency's determination. Without notice, the Board cannot properly address the reasons why the appellant is dissatisfied with the agency's determination. This rule also correlates with the limited jurisdiction of this Court to review "decisions of the Board." 38 U.S.C. § 7252(a); *accord Ledford*, 136 F.3d at 779; *see also Cedar Lumber, Inc. v. United States*, 857 F.2d 765, 767 (Fed.Cir.1988) (general rule is that arguments not presented to the "initial adjudicatory forum" are deemed waived on appeal).

In so holding, the Court is well aware that the adjudicative system established by Congress and administered by the Secretary is meant to be strongly pro-claimant. Indeed, it is this Court that recognized judicially for the first time the uniquely pro-claimant environment in which these claims are to be adjudicated. However, this pro-claimant environment does not leave us free to ignore statutes and implementing regulations imposing duties on claimant in defining their claims. *Cf. Bailey v. West*, 160 F.3d 1360, 1368–1371 (Fed.Cir.1998) (Michel, J., concurring). These provisions must, of course, be interpreted in a generous manner to determine whether, perhaps, an issue was implied. However, we cannot pretend that they do not exist nor can we, in the guise of "inter-

pretation," repeal them. In this connection, it is noted that Congress and the Secretary have provided for accredited representatives to assist claimants to navigate the claims process. These individuals are not generally lawyers but they may be far more attuned to the procedural esoterica of the VA claims system than most lawyers. In this particular case, as we have noted, the appellant was represented, quite actively, by such an accredited representative.

■ All of the above analysis applies if the appellant did not raise an argument to the Board but later raised it to the Chairman in a motion for reconsideration. The motion for reconsideration does not affect the Court's jurisdiction to hear arguments on appeal. *See Mayer*, 37 F.3d at 620. If the Chairman denies the motion for reconsideration, the Court still may properly decline to exercise its jurisdiction over those arguments under the doctrine of administrative exhaustion because they were not raised to the Board.

### A.  MANUAL M21–1

The appellant first argues that the Secretary violated a duty to develop the appellant's claim even though it was not well grounded. The appellant argues that in the VA ADJUDICATION PROCEDURE MANUAL, M21–1, Part III, paras. 1.03b, 1.04a, and Part VI, para. 2.10 [hereinafter MANUAL M21–1] the Secretary voluntarily assumed a duty to develop claims before they were well-grounded.

■ In *Morton v. West*, 12 Vet. App. 477 (1999), this Court upheld the principle outlined in *Grivois v. Brown*, 6 Vet.App. 136 (1994), that absent a well-grounded claim, there is no statutory duty to assist. In *Morton*, the Court expanded that holding to conclude that the MANUAL M21–1 does not trigger the duty to assist before the claimant has submitted a well-grounded claim. *See Morton, supra.* The Court rendered its decision without finding that the Court had jurisdiction to hear this

argument and specifically stated that that decision would be rendered by this case. On this issue, the Court will decline to exercise jurisdiction to consider this argument because it was not raised to the Board. Moreover, it must also be noted that *Morton* resolved this issue such that the appellant could not prevail even if the Court deemed it appropriate to consider his challenge. The Court, therefore, finds that the Board did not err in failing to develop the appellant's claim prior to his submission of a well-grounded claim.

### B.  Duty to Inform

The appellant's second argument is that under 38 U.S.C. § 5103 and *Robinette v. Brown*, 8 Vet.App. 69 (1995), the Secretary had a duty to inform him what specific evidence he should submit to well ground his claim. In *Robinette*, the Court held that when "the Secretary was on notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim 'plausible' and that such evidence had not been submitted with the application[,] . . . upon receipt of the hearsay statement from the veteran, the Secretary had an obligation under section 5103(a)" to inform the claimant "what evidence is required . . . to 'complete' his application." 8 Vet.App. at 80. The appellant contends that he had evidence available which would render his claim well-grounded, but was not told that he should submit that evidence until after the Board's decision.

■ The Court in *Robinette* did not consider the doctrine of exhaustion of administrative remedies because that opinion was issued prior to the Federal Circuit's decision in *Ledford.* The Court must consider whether our decision in *Robinette* was abrogated by *Ledford.* After careful consideration of the Federal Circuit's analysis in *Ledford* and *Collaro*, the Court holds that *Ledford* does not prohibit this Court from hearing appeals on this issue. As described above, it is the responsibility of the claimant to bring all errors of the

VARO to the attention of the Board so that it may properly address, and if appropriate, remedy, these alleged errors. As with any error, the appellant must exhaust all administrative remedies, before bringing an appeal to this Court, including errors under 38 U.S.C. § 5103. When it is alleged that there is specific hearsay evidence in existence that would manifestly well ground a claim, as was the case in *Robinette*, the Secretary has a duty to inform the claimant of what is required to complete the application. In *Robinette*, the appellant impliedly raised this issue to the Board on the record, even though it might not be contained in his NOD or Substantive Appeal. For example, in *Robinette*, the appellant stated that his doctor told him that his disease "most probably" existed at the time of his discharge. 8 Vet.App. at 73. The Board is required to discuss all material facts which are "presented on the record." By so doing, the appellant in *Robinette* effectively raised this issue on the record and to the Board, even though he did not cite to 38 U.S.C. § 5103, which, of course, he is not required to do. *See Akles*, 1 Vet.App. at 120–121.

■ However, in this case, the appellant and his representative did not raise this issue in either the NOD, the Substantive Appeal, or the presentation to the Board nor can it be inferred from the record. This issue was not framed by the SOC. Furthermore, unlike *Robinette*, the record on appeal did not put the Board on notice that such specific and material evidence was available. In his Substantive Appeal, the appellant merely stated what appears to be a hearsay reiteration of diagnoses rendered by Dr. Johnson and Dr. Moore that his disc was permanently injured "quite a while ago," resulting in a permanent disability with a guarded prognosis. Immediately following the statement, the appellant wrote the name, address, and telephone number of Dr. Johnson, and identified Dr. Moore of Henry Ford Hospital. During his personal hearing, the appellant referred again to Dr. Johnson and the Henry Ford Hospital, stating that the doctor told him that his discs had disintegrated. He also mentioned that there had been "about 9 doctors who looked at [him] back when I was applying for my Social Security. They all came up with the same thing, that this [his intervertebral disc] is gone."

The appellant argues that the Secretary erred in failing to inform the appellant that his claim might be well grounded if he were to obtain and submit records from Dr. Johnson, Dr. Moore, or Henry Ford Hospital, because the appellant clearly asserts that the medical records would demonstrate a current diagnosis, and there is a very remote possibility that where there is a diagnosis there may also be an accompanying etiological opinion. On the other hand, the record contains no actual reference or intimation that any of the appellant's treating physicians have opined that the continuous back pain is related to the fall in service that occurred more than 30 years prior to their treatment or the current condition. Therefore, the appellant has not shown that there does or may exist evidence which would make the claim plausible. The Court finds that section 5103(a) was not invoked by the record because even if the records mentioned by the appellant did contain everything in them that the appellant said they did, there is no allusion to any evidence that would or might show that a causative connection exists between the in-service injury and the current back condition. In conclusion, the Court will decline to exercise jurisdiction on this issue since it was neither raised by the appellant nor the record before the Board.

C. Due Process

■ The appellant also complains that VA violated procedural due process because it failed to inform him "that it would not accept hearsay, and needed direct doctors' statements addressing the issues in the case." Appellant's Reply Brief at 4. The appellant misconstrues what the VA adjudicators did in this case. They did

accept the fact that there was a current back condition that had been first diagnosed by medical doctors 34 years after appellant's discharge. In short, they did credit the doctor's statements for whatever they were worth. Even so, the appellant in this case raised the issues of due process for the first time in his brief before the Court. These issues are not ripe for adjudication and need not be addressed on the merits. The appellant did not raise these issues in his NOD, in his Substantive Appeal, or in his presentation to the Board. Furthermore, these issues were not implicitly raised by the record before the Board. Instead, the record reflects that VA informed the appellant on numerous occasions what was required in order to service connect his disabilities. In September 1992, the VARO specifically requested that he provide all his medical records since his discharge and suggested that he submit statements from treating physicians describing his condition. The October 1992 VARO decision stated that his claim was denied because he had not produced any medical evidence. The SOC also stated that his claim had been denied because he had not provided any evidence to show a relationship between his current condition and his military service. Finally, in June 1993, the hearing officer indicated to the appellant and his representative that he should submit medical evidence in support of his claim. In sum, the evidence of record reflects that this issue was neither raised by the appellant nor by the record on appeal and the Court will not exercise its jurisdiction over it.

### D. Duty to Suggest That Evidence Be Submitted

██ The appellant complains that the hearing officer failed to comply with the duties outlined in 38 C.F.R. § 3.103(c)(2), which states:

> The purpose of a hearing is to permit the claimant to introduce into the record, *in person,* any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent.... It is the responsibility of the VA employee or employees conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position.

*Id.* (emphasis in original). These duties are distinct from the duty to inform under 38 U.S.C. § 5103. *See Brewer v. West,* 11 Vet.App. 228 (1998).

For the same reasons as discussed above under 38 U.S.C. § 5103, the Court will decline to exercise its jurisdiction over this issue. Neither the record on appeal nor the appellant raised this issue to the Board. The record on appeal suggested that additional evidence from Dr. Johnson, Dr. Moore, and the Henry Ford Hospital existed regarding the diagnosis of the appellant's current back condition. However, there is no suggestion that this evidence would show a nexus to an event that occurred some 50 years ago that would well ground the appellant's claim. Therefore, the evidence does not indicate that it would "be of advantage to the appellant's position" and the hearing officer had no obligation to advise the appellant who was present with his accredited representative to submit additional evidence. *See* 38 C.F.R. § 3.103(c)(2); *Moffitt v. Brown,* 10 Vet.App. 214, 228 (1997) (no prejudicial error under § 3.103(c)(2) where hearing officer failed to suggest submitting medical evidence which was too speculative to constitute nexus evidence); *Johnson (Ethel),* 8 Vet.App. at 427–28 (no § 3.103(c)(2) error where medical evidence could not satisfy nexus element of well-grounded claim). Since neither the record on appeal nor the appellant raised this issue, the Court will decline to exercise jurisdiction because the appellant has failed to exhaust his administrative remedies, by raising the matter to the Board in a timely manner.

**178**

## III.  CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand.  The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b).  *See Gilbert, supra.*

The decision of the Board is AFFIRMED.